State of Maryland v. Kerryann N. Smith, No. 47, September Term, 2014

**PETITION FOR WRIT OF ERROR CORAM NOBIS — MD. CODE ANN., CRIM. PROC. (2001, 2008 REPL. VOL., 2014 SUPP.) § 8-401 — APPLICABILITY TO PENDING CORAM NOBIS PETITIONS —** MD. CODE ANN., CRIM. PROC. (2001, 2008 REPL. VOL., 2014 SUPP.) ("CP") § 8-401 provides: "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." Respondent filed a Petition for Writ of Error Coram Nobis seeking to have vacated her 2003 judgment of conviction, which was based on her plea of guilty to the crime of conspiracy. The coram nobis petition was pending on October 1, 2012, the effective date of the statute. Even though this Court has a long-held presumption that a statute operates prospectively from its effective date, there is an exception to this presumption when a statute is either procedural or remedial. Because CP § 8-401 is both procedural and remedial, it applies to Respondent's coram nobis action. Consequently, Respondent's failure to file an application for leave to appeal from the judgment of conviction does not operate as a waiver of her right to seek coram nobis relief.

**PETITION FOR WRIT OF ERROR CORAM NOBIS — PRIOR FAILURE TO MOVE TO WITHDRAW GUILTY PLEA OR SEEK RELIEF PURSUANT TO THE POST CONVICTION PROCEDURE ACT — NON-WAIVER OF THE RIGHT TO SEEK CORAM NOBIS RELIEF—** A person is not foreclosed from obtaining coram nobis relief by failing previously either to move to withdraw a guilty plea or file a petition for relief under the Post Conviction Procedure Act.

**PETITION FOR WRIT OF ERROR CORAM NOBIS —VOLUNTARINESS OF GUILTY PLEA — MARYLAND RULE 4-242(C) —** Court of Appeals held that coram nobis petitioner's guilty plea was knowing and voluntary, and that lawyer's testimony at coram nobis hearing concerning having advised defendant prior to guilty plea of nature of charges against him or her is admissible; such testimony may be considered in coram nobis proceeding in determining whether defendant pled "voluntarily, with understanding of the nature of the charge" within meaning of Maryland Rule 4-242(c).

Circuit Court for Montgomery County
Case No. 96240C
Argued: December 10, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 47

September Term, 2014

STATE OF MARYLAND

v.

KERRYANN N. SMITH

Barbera, C.J.,
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

PER CURIAM

Filed: July 13, 2015

*Harrell, J., participated in the hearing of the
case, in the conference in regard to its decision
and in the adoption of the opinion but he retired
from the Court prior to the filing of the opinion.

In accordance with Maryland Rule 8-303(f), we granted Petitioner's petition for writ of *certiorari* in order to answer the following multi-faceted question:

> Did the Court of Special Appeals incorrectly reverse the circuit court's denial of [Respondent]'s petition for a writ of coram nobis where [Respondent] 1) had waived her coram nobis claims, 2) failed to meet her burden of proving that her guilty plea was not knowingly and voluntarily entered, and 3) was barred from seeking a writ of coram nobis on grounds of laches?[1]

On the first issue of whether Respondent waived her right to coram nobis relief, a majority of this Court holds that Respondent did not waive her coram nobis claims by failing to file an application for leave to appeal her prior conviction because Maryland Code (2014 Supp.), § 8-401 of the Criminal Procedure Article applies retrospectively to Respondent's case. The majority further holds that Respondent did not waive her right to pursue coram nobis relief by not moving to withdraw her guilty plea or filing a petition for post-conviction relief when those avenues of relief were available to her.

On the second issue of whether Respondent's guilty plea was knowing and voluntary, a different majority of the Court holds that Respondent's guilty plea was knowingly and voluntarily made, and that testimony from Respondent's counsel concerning having advised Respondent prior to the guilty plea of the nature of the charges against her was admissible at the coram nobis hearing for the purpose of determining

---

[1] Petitioner's contention that the doctrine of laches bars Respondent from obtaining coram nobis relief was not "raised in or decided by" the Circuit Court or addressed by the Court of Special Appeals. Md. Rule 8-131(a). Because the issue is not preserved for appellate review, this Court does not address it.

whether Respondent pled "voluntarily, with understanding of the nature of the charge" within the meaning of Maryland Rule 4-242(c).

Therefore, the judgment of the Court of Special Appeals is vacated.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

Circuit Court for Montgomery County
Case No. 96240C
Argued: December 10, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 47

September Term, 2014

---

STATE OF MARYLAND

v.

KERRYANN N. SMITH

---

Barbera, C.J.,
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

---

Opinion by Barbera, C.J., joined in Part I by
Greene, Adkins, and McDonald, JJ., and joined
in Part II by Greene and Adkins, JJ.

---

Filed: July 13, 2015

*Harrell, J., participated in the hearing of the
case, in the conference in regard to its decision
and in the adoption of the opinion but he retired
from the Court prior to the filing of the opinion.

In 2003, Kerryann Smith ("Smith"), Respondent, pleaded guilty pursuant to a plea agreement to having engaged in a conspiracy to distribute marijuana. The court accepted the terms of the agreement and Smith's guilty plea, then sentenced her to six months' incarceration, all suspended in favor of a one-year term of supervised probation. In January 2012, Smith, who is not a U.S. citizen, but holds a green card, attempted to reenter the United States after a brief trip to Canada. The United States Department of Homeland Security detained her based on the 2003 conviction and initiated removal proceedings under the Immigration and Nationality Act.[1]

Smith filed a petition for writ of error coram nobis in February 2012 seeking to have the conspiracy conviction vacated on the ground that her guilty plea was not knowing and voluntary. She rested that contention, in part, on the assertion that she had not been informed at the time of the plea of the elements or essential nature of the crime of conspiracy, thereby violating Maryland Rule 4-242(c) and the federal constitutional protections underpinning the Rule. Following a hearing in the Circuit Court for Montgomery County, Smith was denied relief. Smith appealed, and the Court of Special Appeals, concluding that Smith's guilty plea was invalid and must be vacated, reversed the judgment of the Circuit Court.

We granted the State's petition to review the judgment of the intermediate appellate court. The State argues, first, that Smith waived her right to seek coram nobis relief

---

[1] The Immigration and Nationality Act has been amended so as to jettison generally the term "deportation" in favor of the term "removal." *See Padilla v. Kentucky*, 559 U.S. 356, 364 n.6 (2010).

because she had neither applied for leave to appeal the conviction nor sought to withdraw the plea or seek post-conviction relief and, second, that Smith's claims of error in the taking of the plea are without merit, in any event.

Whether the State is correct that Smith waived the right to seek coram nobis relief depends in the first instance on whether Maryland Code (2014 Supp.), § 8-401 of the Criminal Procedure Article ("CP § 8-401") applies to Smith's case. The General Assembly enacted CP § 8-401, with an effective date of October 1, 2012. CP § 8-401 provides: "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis."

In Part I of this opinion, the Court holds that CP § 8-401 applies retrospectively to Smith's case. Consequently, Smith's failure to apply for leave to appeal from her 2003 conspiracy conviction does not constitute a waiver of her right to seek coram nobis relief. The Court further holds, in Part I, that Smith's failing to move to withdraw her guilty plea or file a petition for post-conviction relief, likewise, did not constitute a waiver of her right to pursue coram nobis relief.

For the reasons set forth in Part II of this opinion, I disagree with the Court that Smith's guilty plea was knowingly and voluntarily made and, therefore, I dissent to that holding. The record of the hearing at which Smith pleaded guilty does not reflect that she was informed of the nature of the crime of conspiracy, which Maryland Rule 4-242(c), giving full effect to the federal constitution, demands. In my view, Smith is entitled to have the judgment of conviction vacated.

2

*The Plea Agreement and Hearing*

On August 29, 2002, Smith was indicted in the Circuit Court for Montgomery County on charges of possession with intent to distribute marijuana, simple possession of that controlled dangerous substance, and possession with intent to distribute it within a specific distance of a school. The parties, with Smith represented by Harry A. Suissa ("Suissa"), entered into plea negotiations, and an agreement was presented at a hearing held on January 8, 2003.

The prosecutor presented the terms of the agreement: "Your Honor, the plea agreement indicates that the defendant has agreed to plead guilty to conspiracy to distribute a controlled dangerous substance, marijuana. There is no jail cap on executed incarceration and sentencing[.] [T]he State would move to nol pros the remaining count." The agreement required the charging document to be amended from the charge of possession with intent to distribute marijuana to conspiracy to distribute it. The court permitted the amendment.

The court then informed Smith that the conspiracy charge carried a maximum penalty of five years in jail, a $15,000 fine, or both. The court also explained that under the terms of the plea agreement the court "could give you no executed incarceration, but I could impose the full five years and suspend it and place you . . . on a period of probation and if you violated the probation then you could be back before me and you could go to jail if you violate the probation." At that point, Suissa interjected: "One . . . thing that I would need Your Honor to do if Your Honor's inclined to do, on any suspended sentence, [is to impose] no more than 364 days, only because she has – she's been in this country 14

3

years, she has a green card, this is her first offense, but that could affect her." The prosecutor responded: "[L]ooking at [Smith]'s record, I'm not going to object at this point to that request." The court then examined Smith on the plea:

> [Court]: How do you plead to this count of conspiracy to distribute a controlled dangerous substance?
>
> [Smith]: I'm guilty, Your Honor.
>
> ***
>
> [Court]: How old are you?
>
> [Smith]: 22.
>
> [Court]: How far did you go in school?
>
> [Smith]: 11th grade.
>
> ***
>
> [Court]: And I understand you're not a citizen?
>
> [Smith]: No, sir.
>
> [Court]: Okay you understand that by pleading guilty it may affect your immigration status?
>
> [Smith]: Yes, sir.

The court advised Smith of the trial rights she was waiving by pleading guilty and asked if she understood those rights. Smith acknowledged that she understood. The colloquy between the court and Smith continued:

> [Court]: Okay. Other than this plea agreement, has anyone made any promises to you that I would go easier on you if you pled guilty?
>
> [Smith]: No, sir.

4

[Court]:  Did anybody threaten you in any way to get you to plead guilty?

[Smith]:  No, sir.

***

[Court]:  Are you pleading guilty freely and voluntarily?

[Smith]:  Yes, sir.

[Court]:  All right.  Are you under the influence of any drugs or alcohol here today?

[Smith]:  No.

[Court]:  Have you ever been treated for a mental illness?

[Smith]:  No, sir.

[Court]:  Are you satisfied with the help of your attorney?

[Smith]:  Yes, sir.

[Court]:  All right then, I'll accept your plea.  I find it was freely, willingly and knowingly given.

The prosecutor then proffered facts in support of Smith's plea to the conspiracy charge:

> If the State had proceeded with the trial in this matter, the State would have proven through witnesses that on or about June 5, 2002, members of the Prince George's County and Montgomery County task force intercepted a package at the federal express facility on Virginia Manor Drive in Beltsville, Maryland and it was to be delivered to a Christina Swanson, St. Andrew's Nursing Home, at 903 New Hall Street in Silver Spring, Montgomery County.
> The package was scanned by a Trooper Schneider of the Maryland State Police and a canine, a certified drug and protection dog for the Maryland State Police.  The result of the scan produced a positive response on the package for the presence of a controlled dangerous substance.
> Trooper Schneider applied for and obtained a Circuit Court search warrant for the package.  Trooper Schneider opened the package and located

5

inside the package was marijuana. The suspected marijuana was field tested by Schneider and tested positive for a controlled dangerous substance, Schedule I marijuana.

The next day on June 6, 2002, a controlled delivery of the package was conducted at 903 New Hall Street in Silver Spring, Montgomery County, Maryland by Officer McGuigan posing as a federal express driver.

At that point Kerry[a]nn Smith, the defendant in this case, signed for the package at which time the package was taken inside the residence.

Detective St. Louis applied for and obtained a search warrant to search 903 New Hall Street, that address in Montgomery County. The defendant Ms. Smith was located inside the residence at the time the search warrant was executed and a search of the residence revealed numerous documents that were recovered. Located underneath a fish tank were assorted papers, several passports and a cell phone bill. Also located in the bedroom, in bedroom number one in the drawer was suspected marijuana. Located in the same bedroom in a plastic box in the corner was rolling papers. Other cell phones were located and located in the living room on the floor was the federal express package with the marijuana and that marijuana was recovered by Detective St. Louis.

That marijuana that was recovered was then taken to a crime lab and at the crime lab it was analyzed and it did come back positive for a Schedule I narcotic, marijuana. The weight of the package was 7,852 grams and that would have a street value of $20,000. One moment please. That will be the State's proffer.

The court asked if there were any corrections or additions to the proffer, to which Suissa

replied:

Just to clarify certain things. There were only two passports and they were both were [sic] my client's passports. One was an old passport and one was her present passport which was taken. No other passports of any other individuals and the property. We have no other substantial modifications.

The court found Smith guilty of the crime of conspiracy based on the prosecutor's proffer.

Before sentencing, Suissa argued:

On this incident [Smith] told me that a friend of hers, a casual friend, had asked her to take the box for him and he obviously has vanished, he's left the area, we don't know where he is, but that's what this was about, Your Honor. Basically, he was going to come and get the box and that's it. She was not going to be involved in any distribution or anything like that, Your Honor.

6

But we believe that based on her immigration status and based on other factors in the case that the prudent thing to do would be to (unintelligible) enter the plea than chance [a] trial in this matter, Your Honor.

The court addressed Smith:

Okay, well you know obviously you were involved in the drug culture. Whether or not you had active participation in this [or] what the extent of your participation in this particular incident may be somewhat unclear, nevertheless, you had been using marijuana and so my guess is you certainly knew what this was and what it was going to be used for and that's not a good thing and particularly for someone in your status which you jeopardized your whole life by this. Your whole life.

The court sentenced Smith to six months' incarceration, suspended, and placed her on one year of supervised probation. The court also ordered Smith to complete a drug treatment program and perform 40 hours of community service. The court then advised Smith:

[S]ince you pled guilty[,] you don't have the right to appeal, but you may apply for leave to appeal by filing a request to the Court within 30 days. You also have the right to request that I modify, reduce or strike your sentence. For me to consider that[,] you must do it within 90 days of this date.

Smith responded: "Yes, sir." The court did not advise Smith that she had a right to file a motion to withdraw the plea, within ten days, *see* then-Maryland Rule 4-242(g),[2] and the right to pursue post-conviction relief, during the period of her

---

[2] The version of Maryland Rule 4-242(g) in effect at the time of Smith's plea read:
At any time before sentencing, the court may permit a defendant to withdraw a plea of guilty or nolo contendere when the withdrawal serves the interest of justice. After the imposition of sentence, on motion of a defendant filed within ten days, the court may set aside the judgment and permit the defendant to withdraw a plea of guilty or nolo contendere if the defendant establishes that the provisions of section (c) or (d) of this Rule were not

7

probation.[3]  The State entered a *nolle prosequi* of the remaining charges.

Smith did not move to withdraw the plea, apply for leave to appeal, or file a post-conviction petition.

### The Coram Nobis Proceedings

On January 10, 2012, Smith attempted to enter the United States from Canada through Buffalo, New York, where she was detained by the U.S. Department of Homeland Security ("DHS").  The following day, January 11, 2012, DHS initiated removal proceedings based on Smith's 2003 conviction for conspiracy to distribute marijuana.

On February 7, 2012, Smith filed in the Circuit Court for Montgomery County a petition for coram nobis relief, arguing that her guilty plea, conviction, and sentence were defective and that she was now suffering the severe collateral consequence of removal to Jamaica, her native country.  On April 27, 2012, Smith filed a Superceding Petition for Coram Nobis Relief With Declaration and Points and Authorities ("Petition"), in which

---

complied with or there was a violation of a plea agreement entered into pursuant to Rule 4-243. . . .
What was then section (g) is now section (h), and in respects relevant to this case is unchanged.

[3] On the same day, Smith signed a "Notice to the Defendant" that stated:
If you have entered a plea of guilty[,] you do not have the right to appeal[,] but may apply for leave to appeal to the Court of Special Appeals from a final judgment entered by this Court.  If you choose to do so, you must file an application with the Clerk of the Circuit Court within thirty (30) days from this date . . . . You also have the right to file with the Court a written request that I modify, reduce or strike your sentence.  This request must be filed within ninety (90) days from this date.

she alleged, among other claims,[4] that the guilty plea was not knowing and voluntary because she was not advised of the elements of the crime of conspiracy to distribute marijuana, and that the factual proffer presented at the plea hearing was insufficient as a matter of law to sustain a conviction for conspiracy to distribute marijuana.

In its answer to the Petition, the State argued as a preliminary matter that, under *Holmes v. State*, 401 Md. 429 (2007), Smith waived her right to file a petition for writ of error coram nobis because she had not filed either an application for leave to appeal the conviction or a petition for post-conviction relief. The State also responded to the merits of the claims raised in the Petition.

On October 1, 2012, during the pendency of the Petition, CP § 8-401 took effect. A hearing on the Petition was held on November 16, 2012. Smith and Suissa testified at the hearing. Pertinent to the present appeal, Smith testified that Suissa "went over" the charges with her, but she did not recall Suissa "actually sitting down and explaining to [her] in detail[] . . . what is what." Counsel for Smith then questioned her as to whether Suissa had advised her of the proposed amendment of the charging document:

> [Counsel for Smith]: And I wondered if you had a conversation with Mr. Suissa concerning changing any of the parts of the indictment?
>
> [Smith]: Changing it?
>
> [Counsel for Smith]: So that you could plead?

---

[4] Smith raised several claims in the Petition, including that Suissa had provided ineffective assistance of counsel in misadvising Smith concerning how her guilty plea would affect her immigration status. Much of the hearing on the Petition was taken up with testimony and argument concerning that claim, and the coram nobis court denied relief on that ground. The court's ruling on that claim is not before us.

[Smith]: Oh, I'm sorry, yes. Well, for the conspiracy I guess he told me that the Judge would drop it to a misdemeanor so it would not affect my immigration status. He told me that and …

[Counsel for Smith]: Did he then explain the elements of a conspiracy to you?

[Smith]: No.

[Counsel for Smith]: He did not?

[Smith]: No.

Following questioning on other matters, Smith's counsel then asked her: "If you had known at the time that your plea would subject you to deportation would you have entered into the plea?" Smith replied: "No."

Suissa was called by counsel for Smith. Suissa testified on direct examination that his case file evidently had been destroyed. He was able to retrieve from his computer a few documents connected with the case, and only "[t]o a certain extent" did those documents help him to refresh his recollection of the case. Suissa added: "My recollection of the case is very vague. I don't have a tremendous amount of independent recollection of the case." Nevertheless, during cross-examination by the State, Suissa answered "Of course[]" when asked "[D]id you discuss with [Smith] what a conspiracy was?" Neither the State nor Smith's counsel, on redirect, asked any questions of Suissa to ascertain either the extent to which he had discussed with Smith the elements or essential nature of the crime of conspiracy or how the crime might relate to the facts of Smith's case.

In an oral ruling from the bench, the coram nobis court denied the Petition. The court ruled that Smith had waived her right to seek coram nobis relief by failing to apply

10

for leave to appeal, despite the court's having properly advised her of her right to do so within thirty days of the hearing. Even so, the court further ruled on the merits of the Petition, with respect to the claim at issue here, "that [Smith] was advised of the specific charges and advised of the basic elements of each offense, and the penalties for each offense[, Smith's] denials to the contrary notwithstanding, which I do not find to be credible."

### *The Appeal*

Smith appealed and, in an unreported decision, a panel of the Court of Special Appeals reversed the coram nobis court. The intermediate appellate court held that CP § 8-401 applies to the Petition; consequently, Smith's earlier failure to file an application for leave to appeal does not foreclose her from seeking coram nobis relief. The intermediate appellate court made no mention of the State's additional contention that Smith had waived the right to seek coram nobis relief by failing to file either a motion to withdraw the plea or a petition for post-conviction relief. That court held further, on the merits of the Petition, that Smith's guilty plea was not knowing and voluntary because the record did not "reflect that the nature of the charge or the elements of the crime were explained to Smith when she entered her plea[.]" Given that holding, the Court of Special Appeals did not address Smith's alternative claim that there was not a legally sufficient factual basis to support the plea.

We granted the State's petition for writ of *certiorari* in order to answer the following multi-faceted question:

Did the Court of Special Appeals incorrectly reverse the circuit court's denial of Smith's petition for a writ of coram nobis where Smith 1) had waived her coram nobis claims, 2) failed to meet her burden of proving that her guilty plea was not knowingly and voluntarily entered, and 3) was barred from seeking a writ of coram nobis on grounds of laches?[5]

## I.

### *Did Smith Waive the Right to Seek Coram Nobis Relief?*

The State argues that Smith waived her right to seek coram nobis relief by failing to pursue any of three previously available avenues for having her guilty plea reviewed and the judgment based on the plea vacated. The State points out that Smith did not apply for leave to appeal her guilty plea, move to withdraw the plea, or file a post-conviction petition. For the reasons we explain below, we reject all aspects of the State's waiver argument.

### A. Is Smith entitled to the benefit of CP § 8-401?

The State argues that Smith waived the right to pursue coram nobis relief because she failed to file an application for leave to appeal the judgment of conviction. The State recognizes that the answer to this argument focuses squarely on whether Smith gets the benefit of CP § 8-401, which became effective October 1, 2012, seven and a half months after she filed the Petition, on February 7, 2012, and while it remained pending disposition in Circuit Court. The State argues that CP § 8-401 operates prospectively, and thus governs *only* coram nobis petitions filed on or after the statute's effective date, October 1, 2012, as there is no express language or manifest indication to rebut the presumption of prospective

---

[5] The State's contention that the doctrine of laches bars Smith from obtaining coram nobis relief was not "raised in or decided by" the Circuit Court or addressed by the Court of Special Appeals. Because the issue is not preserved for appellate review, we do not address it. Md. Rule 8-131(a).

application. Furthermore, according to the State, CP § 8-401 is neither procedural nor remedial because the statute "did not alter the coram nobis remedy available to Smith, nor did it alter the procedures Smith undertook to pursue her common law coram nobis remedy." The State adds that, even if CP § 8-401 is "remedial," it impairs the State's vested right to finality of its judgments of conviction. Therefore, the State concludes, Smith's coram nobis action, which was filed before October 1, 2012, is governed by *Holmes v. State*, 401 Md. 429 (2007). We shall discuss *Holmes* in greater detail later in this opinion, but, at this point, it is enough to recount that we held in *Holmes*, which was decided before the enactment of CP § 8-401, that the failure to file an application for leave to appeal a guilty plea judgment, after having been informed by the plea judge of the right to file such an application, operates as a waiver of the right to file thereafter a coram nobis petition. *See Holmes*, 401 Md. at 445−46.

Smith counters that she is entitled to the benefit of CP § 8-401. She maintains that the statute is both procedural and remedial and does not impair any "vested right" of the State; therefore, the statute applies "retrospectively" to her coram nobis action, which, she emphasizes, was pending disposition in the Circuit Court on the effective date of the statute. We agree with Smith.

"The question whether a statute operates retrospectively, or prospectively only, ordinarily is one of legislative intent." *Langston v. Riffe*, 359 Md. 396, 406 (2000). This Court has "long adhered to four principles" in matters involving the scope of applicability of new legislation:

13

(1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

*Pautsch v. Real Estate Comm.*, 423 Md. 229, 263 (2011). *See also Rawlings v. Rawlings*, 362 Md. 535, 555 (2001) (stating that the first "well settled rule[] of statutory interpretation . . . applicable in seeking to ascertain the actual intention of the legislature" is that "[a] statute [or rule of procedure] is presumed to operate prospectively from its effective date, absent clear language to the contrary, or unless the manifest intention of the Legislature indicates otherwise[,]" and the second rule is that, "[d]espite the presumption of prospectivity, a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions whether accrued, pending, or future, unless a contrary intention is expressed") (quoting *Mason v. State*, 309 Md. 215, 219−220 (1987) (emphasis deleted)).

Smith gets the benefit of CP § 8-401, by application of the second principle outlined in *Pautsch*: "a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective." *Pautsch*, 423 Md. at 263 (2011). In that regard, to the extent that application of this principle to Smith's case (and that of others similarly situated) is understood to be a "retrospective" application of CP § 8-401, it must also be

understood that application of the holding in this case is limited to those cases, like Smith's, that come within the scope of this principle.[6]

## 1. CP § 8-401 governs procedure.

In *Langston,* we explained that "a law is substantive if it creates rights, duties and obligations," and procedural if it "simply prescribes the methods of enforcement of those rights." 359 Md. at 419 (internal quotation omitted). *Langston* involved a statutory amendment allowing a court to set aside a declaration of paternity on the basis of blood or genetic tests. *Id*. at 396. Prior to the amendment, a court could alter a declaration of paternity only within 30 days of the decision or in instances of "fraud, mistake, or irregularity." *See* Md. Rule 2-535(b). In holding that the amendment was procedural, we reasoned that it established "an additional procedure or type of proceeding by which a putative father could seek a revision of a prior paternity declaration[,]" and, "[a]lthough the original procedure for revisiting paternity remains the same after [enactment of the amendment], the methods by which revisiting the issue of paternity may be done have been expanded by the statute." *Langston*, 359 Md. at 408. Similarly, we have held that a statute's amendment relaxing the requirements for post-conviction DNA testing was procedural in nature because it "prescribes the standard by which the court assesses a

---

[6] We do not decide, for example, whether someone in the position of petitioner Holmes, *see Holmes*, 401 Md. 429, or someone similarly situated who was found to have waived the right to coram nobis relief by failing to file for leave to appeal his or her conviction, is precluded from filing, now or in the future, a subsequent petition for coram nobis relief, in order to litigate a claim not previously decided on its merits. In this connection, we have stated in the past that there is no time limit for seeking coram nobis relief, *see Skok v. State*, 361 Md. 52, 67 (2000); moreover, insofar as our research discloses, we have not limited the number of coram nobis petitions that can be filed.

petitioner's entitlement to post conviction DNA testing . . . ." *Gregg v. State*, 409 Md. 698, 715 (2009).

The coram nobis remedy that exists today was established in *Skok v. State*, 361 Md. 52 (2000). In *Skok*, we expanded the scope of the common law writ of error coram nobis to serve not merely as a remedy for errors of fact, but also as "a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds." *Id*. at 78.

In *Holmes v. State*, we determined that there exists a procedural barrier to seeking coram nobis relief when a person fails to file for leave to appeal his or her conviction. We held:

> [I]f an individual who pleads guilty, having been informed of his right to file an application for leave to appeal from his conviction and sentence, does not file such an application for leave to appeal, a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding.

401 Md. 429, 445−46 (2007). *Holmes* did not alter the relief described in *Skok*, but rather, identified a specific procedural hurdle to surmount in attaining that relief.

Rather than create a new right, duty, or obligation, CP § 8-401 effects a change in procedure by removing a barrier to coram nobis relief. As in *Langston*, CP § 8-401 expands the methods by which a petitioner can challenge his or her conviction on constitutional or fundamental grounds, and, as in *Gregg*, the statute relaxes the standards for filing a petition for writ of error coram nobis.

16

Because CP § 8-401 changes procedure, rather than creates a substantive right, we apply the statute to cases pending in court on the statute's effective date. *See Thompson v. State*, 411 Md. 665, 667, 679−80 (2009) (holding that CP § 8-201, which prescribes post-conviction review of DNA evidence, is a procedural statute and thus had "retrospective" application to two circuit court rulings—the denial of post conviction relief and denial of a motion for new trial—that were pending in the Court of Appeals on the statute's effective date); *State v. Matthews*, 415 Md. 286, 289−90 (2010) (stating that then-newly enacted CP § 8-301, which addresses the petition for writ of actual innocence, is "procedural in nature" and therefore "may be applicable to the present case") (citing *Gregg*, 409 Md. at 715 (noting that legislatively enacted procedural changes "ordinarily appl[y] to all actions whether accrued, pending or future, unless a contrary intention is expressed")).

**2. CP § 8-401 is remedial.**

"[R]emedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries." *Doe v. Roe*, 419 Md. 687, 703 (2011). "[S]tatutes are remedial in nature if they are designed to correct existing law[.]" *Weathersby v. Kentucky Fried Chicken Nat'l Management Co.*, 86 Md. App. 533, 550 (1991) (citing *State v. Barnes*, 273 Md. 195, 208 (1974)).

We concluded in *Thompson, supra,* that, in addition to being procedural in nature, the amendments to CP § 8–201 were remedial. At the time of Thompson's post-conviction hearing in 2007, CP § 8–201 provided for a direct appeal of a post-conviction court's denial of a motion for a new trial only under certain circumstances enumerated in the statute. 411 Md. at 676−77. In 2008, however, CP § 8-201 was amended "to provide . . . broader appeal

rights and more liberal standards for the granting of new trials." *Id.* at 678. We held that the change in the statute was remedial and therefore applied to Thompson's pending appeal because the amendment allowed petitioners "to reach the substantive issue of guilt by lowering the bar to obtaining a new trial and according greater access to this Court." *Id*. at 680; *see also Gregg*, 409 Md. at 715 (CP § 8–201 is remedial because it "improves the existing remedy by making it easier for qualifying petitioners to establish entitlement to such testing"); *Matthews*, 415 Md. at 297 (explaining that CP § 8-301, permitting a convicted person to file a petition for writ of actual innocence based on newly discovered evidence at *any time*, is a remedial statute). Like the statutes at issue in *Thompson*, *Gregg*, and *Matthews*, CP § 8-401 is remedial because it lowers the bar for petitioners who seek relief for injuries suffered from their unconstitutional guilty pleas.

A statute also may be remedial if it is "designed to correct existing law[.]" *Weathersby*, 86 Md. App. at 550. CP § 8-401 remedies the existing law—specifically this Court's holding in *Holmes*. *Holmes* holds that, if a person does not file for leave to appeal, "a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding." 401 Md. at 445−46. We have no doubt that CP § 8-401 was passed in response to *Holmes* and supplants that case, providing that "[t]he failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." To be sure, the Legislature did not state expressly that it was nullifying *Holmes*. It is no less obvious, though, that the contrary language of the *Holmes* holding and the statute makes this clear.

18

The legislative history, scant though it is, further confirms this. On January 28, 2012, George Harper, a Maryland attorney, sent a letter urging the Chairman of the House Judiciary Committee to "undo[]" the "pernicious decision" of *Holmes* by enacting legislation stating that "[t]he failure to file a petition for leave to file an appeal shall not be construed as a waiver of the right to file a petition for writ of error coram nobis." This letter was sent one month before House Bill 1418, the bill that eventually became CP § 8-401, was introduced. Although it is not explicit on the face of House Bill 1418 that the House Judiciary Committee relied on this letter in drafting the bill, its language is nearly identical to the letter's proposed language overturning *Holmes*. Furthermore, the Fiscal and Policy Note accompanying House Bill 1418 set forth the law at the time the bill was proposed, listing *Holmes* as the most recent legal development on the subject. Fiscal and Policy Note, House Bill 1418 (2012 Session, Maryland General Assembly), *available at* http://mgaleg.maryland.gov/2012rs/fnotes/bil_0008/hb1418.pdf. Because the statute was in direct contrast to *Holmes*, it is clear that CP § 8-401 served to correct existing law.

**3. CP § 8-401 does not impair any "vested right" of the State.**

Even if a statute applies "retrospectively," "a statute will not be given that effect if it would impair vested rights[.]" *Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 381 (2013) (quoting *Pautsch*, 423 Md. at 263). The State argues that "retrospective" application of CP § 8-401 significantly impairs the State's "primary defense" to the Petition—that Smith waived her right to apply for coram nobis relief because she failed to appeal her conviction. Smith counters that "[a]ll statutes that remove procedural bars will

19

'impair' the state's defense," and further, this Court has held that such procedural statutes (*e.g.,* statutes that change a statute of limitations) operate retrospectively.

Even assuming that CP § 8-401 is to be applied "retrospectively," to govern petitions that, unlike Smith's case, were *not* pending on the date the statute became effective,[7] we agree with Smith that application of CP § 8-401 does not impair the State's vested right to its affirmative defense that Smith waived her right to coram nobis relief. "We, along with other jurisdictions, . . . have determined that the elimination of an affirmative defense does not hinder, eliminate, or modify a substantive right, and thus, a statute or rule that eliminates an affirmative defense can be applied retrospectively." *Rawlings*, 362 Md. at 560 n.21. This is because "a person does not have an inherent vested right in the continuation of an existing law[.]" *Allstate Ins. Co. v. Kim*, 376 Md. 276, 298 (2003).

### 4. CP § 8-401 governs the Petition.

In summary, CP § 8-401 is both procedural and remedial, and it does not impair any vested right of the State to the "finality" of its judgments of conviction. Moreover, the General Assembly did not express an intent to limit the applicability of the statute to those coram nobis petitions filed after October 1, 2012. Accordingly, CP § 8-401 applies to all "cases pending in court when the statute becomes effective." *Pautsch*, 423 Md. at 263. Applying CP § 8-401 to Smith's coram nobis action, which was pending in court on

---

[7] See *supra* note 6 and accompanying text.

20

October 1, 2012, we hold that Smith did not waive her right to coram nobis relief by failing to file an application for leave to appeal.

## B. Did Smith otherwise waive the right to seek coram nobis relief?

The State argues that, even if we hold that CP § 8-401 governs Smith's coram nobis action, Smith still waived her right to coram nobis relief by not seeking to withdraw the guilty plea[8] or pursuing relief under the Post Conviction Act, currently found in Title 7 of the Criminal Procedure Article (CP). *See* Md. Code (2008 Repl. Vol, 2012 Supp.), §§ 7-101 to -301. The State looks to our decision in *Skok* as mandating that conclusion. A careful reading of *Skok* proves the fallacy of the State's argument.

We begin our review of *Skok* by noting that the petitioner in that case, Pasquale Skok, was, in material respect, in the identical position as is Smith. Like Smith, Skok was not born in the United States, but, at the time of the criminal proceedings that underlay the coram nobis matter we had before us in *Skok*, he had been a lawful resident of this country for years. 361 Md. at 55. Also, not unlike Smith, Skok was twice convicted in 1994 on the basis of two separate pleas to misdemeanors: the first was a plea of guilty to possession of cocaine, for which he was sentenced to two years' imprisonment, all suspended but the two days he already served; the second, eight months later, was a plea of nolo contendere to possession of cocaine, for which he was sentenced to one day, with credit for the day he

---

[8] Neither in its written answer to the Petition nor at the hearing on the Petition did the State argue that Smith had waived her right to coram nobis relief by not seeking to withdraw her guilty plea. Consequently, the State has not preserved that issue for appellate review. *See* Md. Rule 8-131(a). In the interest of providing guidance to the trial courts, we shall exercise the discretion provided under the same Rule to decide the issue. See *infra* n.13.

21

already served. *Id.* at 56. Three years later, Skok, not unlike Smith, faced with the threat of removal from the United States, filed a petition for writ of error coram nobis seeking to have the judgments of conviction vacated. *Id.* Skok, much like Smith, asserted that the plea hearings did not comply with Maryland Rule 4-242(c) and (d), and thereby violated due process because neither plea was voluntary and knowing. *Id.* at 56–57.

Like Smith, Skok was denied coram nobis relief by the Circuit Court. The Circuit Court in Skok's case first ruled (incorrectly, as was later determined) that the writ was not available to Skok because of the availability of post-conviction relief. *Id.* at 60. Skok filed a motion for reconsideration on the ground that post-conviction relief was not a remedy then available to him; the court denied the motion, stating that "[a] Writ of Error Coram Nobis is an extreme remedy and is not appropriate relief in this case." *Id*. at 60–61.

Skok appealed to the Court of Special Appeals. The State moved to dismiss the appeal, "relying upon language in the Maryland Post Conviction Procedure Act, Art. 27, § 645A(e)[.]" *Id.* at 61. The Court of Special Appeals denied the motion to dismiss and affirmed the Circuit Court. *Id.* We described in our *Skok* decision the reasoning of the Court of Special Appeals: "Although the intermediate appellate court did state that Rules 4-242(c) and 4-242(d) had been violated in Skok's two trials for possession of cocaine, the court held that, in Maryland, coram nobis relief can only be granted when 'based on facts not known to the trial judge when the plea was accepted.'" *Id.* at 61–62 (internal citations omitted). The Court of Special Appeals continued: "'Both [convictions] were based on careless procedural errors committed by the trial judge, not upon *facts* unknown to the trial judge. This is fatal to appellant's claim.'" *Id*. at 62.

22

We issued a writ of *certiorari* in *Skok* for the express purpose of "resolv[ing] important questions concerning the right to appeal in a coram nobis action and the issues which may properly be raised in such an action." *Id.* at 55. In a unanimous opinion, we reversed the judgment of the Court of Special Appeals.[9]

We examined the common law roots of the writ of error coram nobis and then reviewed, as many other state appellate courts had done in recent decades, "[t]he leading American case concerning the nature and scope of a coram nobis proceeding[,]" *United States v. Morgan*, 346 U.S. 502 (1954). *See Skok*, 361 Md. at 71. We concluded that the essential nature of the writ of coram nobis is that it is an "extraordinary remedy" justified "only under circumstances *compelling such action to achieve justice*." *Id*. at 72 (quoting *Morgan*, 346 U.S. at 511 (emphasis added)). Moreover, as the *Morgan* Court had concluded, "coram nobis should be available to raise fundamental errors in attempting to show that a criminal conviction was invalid under circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier." *Skok*, 361 Md. at 72−73 (internal quotation and citations omitted). In such circumstances, the claim of error must be heard by the court; "[o]therwise a wrong may stand uncorrected." *Id*. at 73 (quoting *Morgan*, 346 U.S. at 512−13). The *Morgan* Court elaborated:

> Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be

---

[9] We also granted the State's cross-petition, which contested the Court of Special Appeals's conclusion that Skok had the right to appeal the denial of his coram nobis petition. We held that Skok's appeal was authorized by section 12-301 of the Courts and Judicial Proceedings Article. *Skok*, 361 Md. at 66.

affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid.

*Id*. (quoting *Morgan*, 346 U.S. 512−13).

We further emphasized in *Skok* that "contemporary conditions and public policy" justify the now-recognized expanded scope of coram nobis relief, so as to permit certain claims of legal error that are brought for the first time years after the fact. We stated:

> Along with the vast majority of appellate courts which have considered the matter, we believe that the scope of coram nobis, as delineated in *United States v. Morgan*, is justified by contemporary conditions and public policy. Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.

361 Md. at 77 (footnote omitted).

We recognized that "serious collateral consequences of criminal convictions have become much more frequent in recent years." *Id*. at 77. We noted both the proliferation of recidivist statutes and that, "apparently because of recent changes in federal immigration laws, regulations, and administration, there has been a plethora of deportation proceedings against non-citizens based on relatively minor criminal convictions." *Id*. We concluded:

> In light of these serious collateral consequences, there should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds. Such person should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law.

24

*Id*. at 78.

We recognized that "this expanded scope of coram nobis to challenge criminal convictions is, however, subject to several important qualifications[.]" *Id*. at 78. We identified three conditions necessary to the grant of coram nobis relief: "the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional, or fundamental character"; "a presumption of regularity attaches to the criminal case, and the burden of proof is on the coram nobis petitioner"; and "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction." *Id*. at 78−79. We further stated:

> Basic principles of waiver are applicable to issues raised in coram nobis proceedings. Similarly, where an issue has been finally litigated in a prior proceeding, and there are no intervening changes in the applicable law or controlling case law, the issue may not be relitigated in a coram nobis action. Therefore, the same body of law concerning waiver and final litigation of an issue, which is applicable under the Maryland Post Conviction Procedure Act, Code (1957, 1996 Repl. Vol., 199 Supp.) . . . shall be applicable to a coram nobis proceeding challenging a criminal conviction.

*Id.* at 79 (internal citations omitted). We added:

> Finally, one is not entitled to challenge a criminal conviction by a coram nobis proceeding if another statutory or common law remedy is then available. . . . Accordingly, the expanded coram nobis remedy to challenge a criminal conviction, which we today recognize, will ordinarily be available only to a person who, based on the conviction, is not incarcerated and is not on parole or probation.

*Id*. at 80.

We held that Skok was entitled to a hearing on the claims he raised in his coram nobis petition, which included the claims that his pleas were not taken in compliance with

25

Rule 4-242(c) and (d), and were unknowing and involuntary. *Id*. at 82. In that regard, we pointed out that other courts around the country have granted coram nobis relief based on the petitioner's showing that his plea of guilty or nolo contendere was not knowing or voluntary. *See id*. at 80−81 (collecting cases). "Moreover, the courts have regularly held that violations of rules similar to Maryland Rule 4-242, which are designed to insure that guilty and nolo contendere pleas are voluntary, constitute a basis for coram nobis relief." *See id*. at 81 (collecting cases).

The State, notwithstanding the reasoning and holding of this Court in *Skok*, insists that Smith, whose case comes to us in nearly the identical procedural posture as was presented in *Skok*, has waived the right to seek such relief because, in addition to her having not applied for leave to appeal—a procedural hurdle that CP § 8-401 has removed—Smith did not move to withdraw the plea or file a post-conviction petition. We disagree, for any of three reasons.

First, the State overlooks that Skok, in addition to not filing an application for leave to appeal, had not moved to withdraw his guilty plea or file for post-conviction relief. Despite Skok's failure to pursue any of those avenues of relief, we did not conclude that Skok had waived the right to file a petition for the common law writ of error coram nobis; to the contrary, we held that Skok was entitled to a remand for a hearing on the allegations.[10] *Id*. at 81.

---

[10] We agree with the dissent that we were not asked to decide whether Skok's failure to move to withdraw his guilty pleas or seek post-conviction relief constituted a waiver of the right to seek coram nobis relief. Nonetheless, we were well aware of the procedural history

26

Furthermore, we did not otherwise intimate, much less state expressly, in *Skok* that the failure to file a petition for post-conviction relief in all cases constitutes a waiver of the right later to file a coram nobis petition when post-conviction relief is not available. What we did state, as we set forth *supra,* is that "the same body of law concerning waiver and final litigation of an issue" that is provided in our Post Conviction Procedure Act applies to coram nobis proceedings. We then listed cases exemplifying the applicability of those principles. *See id*. at 79. In every listed case in which we held that an allegation was "waived," the waived allegation had not been raised at trial or in a *previously-filed* appeal, application for leave to appeal, or post-conviction petition, in which, for one reason or another, the petitioner had not opted to include the allegation of error that the petitioner sought to have addressed for the first time in the subsequent post-conviction proceeding.[11] *See State v. Rose*, 345 Md. 238, 243−50 (1997); *Hunt v. State*, 345 Md. 122, 132−39, 147 (1997); *Walker v. State*, 343 Md. 629, 640−50 (1996); *Oken v. State*, 343 Md. 256, 269−72 (1996).

Smith, like Skok, is not incarcerated, on parole or probation, and, as was the case with Skok, she has no other present avenue of relief. Her claims are constitutional and

of the case, *see id*. at 55−62, and did not even hint at the possibility that, were the issue before the Court, the outcome of the appeal would have been quite different.

[11] For reasons we discuss *infra,* the present case comes before us in a different posture than did the cases we addressed in *Rose*, *Hunt*, *Walker* and *Oken*. By filing their prior petitions, all of those petitioners (obviously) demonstrated that they knew of the availability of that remedy. Smith did not file a prior petition for post conviction relief, and as we shall point out later in this opinion, the record does not reflect even that she knew of, much less intentionally forwent, the opportunity to litigate in post-conviction the claim she raises for the first time in this coram nobis action.

fundamental in nature, and, as with Skok's claims, were not previously litigated. Smith is entitled to pursue the same relief as that which we held Skok was entitled to pursue.

Second, the statutory post-conviction waiver scheme that we referred to in *Skok* does not bar Smith's pursuing her coram nobis claim. The State contends that application of that scheme here demonstrates that, because she did not seek relief under the Post Conviction Procedure Act, Smith has waived the right to litigate in this coram nobis action the claim that her guilty plea was unknowing and involuntary. The State's contention fails, as a review of our cases on the subject demonstrates.

In *Curtis v. State*, 284 Md. 132 (1978), we thoroughly analyzed the text, history, and purpose of then-Article 27, § 645A(c) (now CP § 7-106(b)).[12] We began by examining the first paragraph of § 645A(c):

---

[12]  Article 27, § 645A(c) provided at the time:
> *When allegation of error deemed to have been waived.* –  For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances.  The burden of proving the existence of such special circumstances shall be upon the petitioner.
>
> When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation.

In 2001, Article 27, § 645A(c) was recodified as CP § 7-106(b), which provides:

28

The first paragraph of subsection (c) declares that, for purposes of the Post Conviction Procedure Act, "an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation" in a prior proceeding. The test for "waiver" which the Legislature contemplated was clearly the "intelligent and knowing" failure to raise, not the failure of counsel or an unknowing petitioner to raise an issue. The first paragraph of subsection (c) goes on to provide that where there is a knowing and intelligent failure to raise an issue previously, the failure "shall be excused because of special circumstances," with the burden being upon petitioner to prove the existence of special circumstances. Thus, the matter of "special circumstances" only becomes pertinent where there is an intelligent and knowing failure of the petitioner to previously raise an issue. Where the record affirmatively shows that there was not an intelligent and knowing failure to raise, there is nothing to "excuse," and the presence or absence of "special circumstances" has no relevance.

*Id*. at 139. We then turned to the second paragraph of the subsection:

*Waiver of allegation of error*. – (1) (i)  Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:

    1.  before trial;
    2.  at trial;
    3.  on direct appeal, whether or not the petitioner took an appeal;
    4.  in an application for leave to appeal a conviction based on a guilty plea;
    5.  in a habeas corpus or coram nobis proceeding began by the petitioner;
    6.  in a prior petition under this subtitle; or
    7.  in any other proceeding that the petitioner began.

  (ii) 1.  Failure to make an allegation of error shall be excused if special circumstances exist.

      2.  The petitioner has the burden of proving that special circumstances exist.

(2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation.

The Revisor's note related to the 2001 revision states, in pertinent part:  "This section is new language derived *without substantive change* from former Art. 27, § 645A…(c)." (Emphasis added).

The second paragraph of subsection (c) provides that where an allegation of error could have been made by a petitioner previously, "but was not in fact so made, there shall be a *rebuttable* presumption that said petitioner *intelligently and knowingly* failed to make such allegation." (Emphasis supplied.) The statute does not speak in terms of a conclusive presumption of waiver, absent special circumstances . . . . Rather, it is a presumption of an intelligent and knowing failure to have raised an issue, which failure can be rebutted by evidence or stipulated facts showing that petitioner did not "intelligently and knowingly" fail to raise the issue previously.

*Id*. We concluded:

The standard of "waiver" for purposes of the [post conviction] Act is whether "the petitioner himself 'intelligently and knowingly' failed to raise the issue" or, stated another way, whether he was previously "aware of and understood the possible defense." In *Washington v. Warden*[, 243 Md. 316, 321-22 (1966)], the Court held that *facts* showing a lack of comprehension by petitioner adequately rebutted the presumption of an intelligent and knowing waiver. Moreover, the *Washington* case makes it clear that under the statute, the concept of a rebuttable presumption that a failure to raise an issue was intelligent and knowing, and the concept of "special circumstances" excusing an intelligent and knowing waiver, are separate and distinct matters.

In sum, with respect to those situations governed by the "waiver" standards of subsection (c), where the petitioner establishes that he did not in fact intelligently and knowingly fail to raise an issue previously, such issue cannot be deemed to have been waived. He need not, in addition, establish "special circumstances." It is only where the petitioner in fact intelligently and knowingly failed to raise an issue, or where he is unable to rebut the presumption of an intelligent and knowing failure, that he must show "special circumstances" in order to excuse his failure.

*Id*. at 140 (citations omitted).

We recognized, though, that "the above holding is not necessarily dispositive of cases like the present one. The foregoing principles may not govern every situation where there has been a failure to raise a matter previously." *Id*. at 141. It remained for us to decide whether the General Assembly "intend[ed] that the definition of 'waiver' set forth in subsection (c)" of the statute "determine[s] in all cases the right to raise for the first time

30

any issue in a post conviction action, regardless of the nature of prior procedural defaults, tactical decisions of counsel, or omissions of counsel[.]" *Id.*

We gave effect to the General Assembly's evident purpose in using the "intelligent and knowing" language, by examining the Supreme Court's jurisprudence concerning the meaning and applicability of the phrase "a knowing and intelligent waiver." We looked to *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), "the cornerstone regarding waiver of certain basic constitutional rights." *See Curtis*, 284 Md. at 142−43. In that case, the Supreme Court declared that "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson*, 304 U.S. at 464; *see also Faye v. Noia*, 372 U.S. 391, 439 (1963) (employing that waiver standard). We noted as well that the Supreme Court did not apply this strict standard of waiver to all cases of prior action or inaction by a defendant, *see Curtis*, 284 at 142−47, and we concluded that the applicability of the post-conviction statute's waiver provision depends upon the nature of the right alleged to have been violated and the surrounding circumstances:

> [T]he Legislature, when it spoke of "waiver" in subsection (c) of Art. 27, § 645A, was using the term in a narrow sense. It intended that subsection (c), with its "intelligent and knowing" standard, be applicable only in those circumstances where the waiver concept of *Johnson v. Zerbst* and *Fay v. Noia* was applicable. Other situations are beyond the scope of subsection (c), to be governed by case law or any pertinent statutes or rules. Tactical decisions, when made by an authorized competent attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant.

31

*Id*. at 149−50 (footnote omitted). We have not departed from this construction of the waiver scheme in the post-conviction statute. *See Holmes*, 401 Md. at 457−58 ("The intelligent and knowing waiver standard in Section 645A (c)" applies only to situations that "require a litany with the defendant.") (quoting *Curtis*, 284 Md. at 149) (internal citations and footnotes omitted); *Rose*, 345 Md. at 244 (quoting *Curtis*, 284 Md. at 149−50, and stating that "[t]his interpretation of Art. 27, § 645[A](c), has been reaffirmed on numerous occasions[]") (collecting cases).

Applying to the present coram nobis action the waiver rule of *Skok*, informed by *Curtis* and its progeny, we begin by recognizing that Smith's allegation that her 2003 guilty plea was not knowing and voluntary implicates a "fundamental right" subject to the *Johnson v. Zerbst* waiver standard. *See Curtis*, 284 Md. at 143 (observing that, "[d]ue to the conclusive nature of a guilty plea, . . . 'courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences[]'") (quoting *Machibroda v. United States*, 368 U.S. 487, 493 (1962)). Thus, under *Curtis*, the waiver provisions of what is now CP § 7-106(b) apply to Smith's coram nobis action. By application of that subsection, the record before us must show that Smith rebutted the presumption that she knowingly and intelligently failed to file a post-conviction petition. The very nature of the rights subject to the "intelligent and knowing" waiver standard of the post-conviction statute mandates that the burden to rebut the presumption of waiver not require much by way of evidence, as *Curtis* itself demonstrates. *See* 284 Md. at 150–51 (holding that proffered facts, accepted by the court for purposes of addressing the State's motion to dismiss the petitioner's second post-conviction petition,

32

sufficed to rebut the presumption that petitioner Curtis had knowingly and intelligently waived, at an earlier juncture, his Sixth Amendment right to counsel claim).

In the present case, Smith's coram nobis counsel asserted in the Petition that Smith had not knowingly and intelligently failed to file an application for leave to appeal from her 2003 guilty plea conviction. Counsel argued:

> As mentioned in [Smith's] declaration [attached to the Petition] and throughout this petition, there is no way that Ms. Smith could have known that her attorney was ineffective in his advise [sic] that she would not face adverse immigration consequences as a result of the plea. . . . It is precisely because of the incorrect legal advice, something she had no reason to know of within the extremely short time window to file an application for leave to appeal, that she was in no position to knowingly and intelligently waive her allegations that she makes in this petition. In order for her to have waived the issue presented here, the Court would have to find that she knew her attorney gave her incorrect legal advice within the 30 days after the plea. As Ms. Smith makes clear in her declaration she only found out about her lawyer's advise [sic] being incorrect after she was detained in 2012.

In its Answer to the Petition, the State first countered Smith's declaration that she had not knowingly and intelligently waived the right to raise her coram nobis claims in an application for leave to appeal. More relevant at this point in our discussion, however, is what the State added to its waiver argument:

> Additionally insofar as waiver is concerned, though a majority of the Court of Appeals has never addressed the issue whether the failure to file for post conviction relief results in the waiver of claims on coram nobis review when those claims could have been raised in a post conviction proceeding pursuant to [the Post Conviction Procedure Act], in her dissenting opinion in *Holmes*, Judge Raker stated that the majority had cut "the heart out of the writ of coram nobis in Maryland by holding that petitioner waived the right to challenge his conviction through a petition for writ of coram nobis by his failure to file an application for leave to appeal his guilty plea or a petition for post-conviction relief." 401 Md. at 475. Not only did Smith not file for leave to appeal from the conviction on her guilty plea, she did not pursue post

33

conviction relief while that relief was still available to her. Under these circumstances, all of Smith's claims should be deemed waived.

Neither in its Answer, nor at the hearing on the Petition, did the State, with respect to Smith's failure to file a post-conviction petition, argue anything other than that, by merely failing to seek post-conviction relief, Smith had waived her right to raise *any* claims in coram nobis.

Contrary to the State's argument, *Curtis* and its progeny teach that Smith's claim at issue here—that her plea was not knowing and voluntary—is not among those claims that can be waived merely by inaction. Instead, our case law teaches that, because Smith's claim implicates a fundamental right, she is entitled to have that claim litigated for the first time in a coram nobis action so long as she is able to rebut the presumption that she "intelligently and knowingly" waived the claim by failing to raise it at an earlier juncture. *See Curtis*, 284 Md. at 140.

The coram nobis court denied Smith's claim of ineffective assistance of counsel on its merits (a ruling that Smith does not contest at this stage). As for the remaining claims, which necessarily include Smith's present claim that the plea was not knowing and voluntary, the court ruled preliminarily and without elaboration that all "are waived." Moreover, notwithstanding that the State had argued the point, the court gave no indication in its ruling that Smith's failure to file a post-conviction petition was a ground, independent of Smith's failure to file an application for leave to appeal, for finding her coram nobis claims waived. The court's silence on the subject of Smith's not having sought post-conviction relief, coupled with the court's apparent reliance on the State's "waiver by

34

inaction" argument, leaves us with a record devoid of any indication, or factual finding by the coram nobis court, that Smith actually knew of the available remedy of post-conviction and intelligently forwent the opportunity to pursue it. On this point, what we stated in *Holmes* is instructive. *See* 401 Md. at 469-70 (discussing *Parker v. State*, 160 Md. App. 672 (2005), and observing that Parker had not waived the right to seek coram nobis relief by failing to apply for leave to appeal from his guilty plea conviction because, not having been advised of the right to file an application for leave to appeal, Parker could not knowingly and intelligently have waived that right). We are satisfied, under the particular circumstances presented here, that the record itself offers the necessary rebuttal to the presumption that Smith knew of and intelligently relinquished the right to raise her present claim earlier in a post-conviction petition.

Smith, not having waived previously the right to claim that her plea was unknowing and involuntary, is entitled to pursue the claim at coram nobis. She satisfies the standard for seeking this extraordinary common law remedy because she: stands convicted of a deportable offense; is not incarcerated; is not on parole or probation; and, "suddenly faced with a significant collateral consequence of [] her conviction, . . . can legitimately challenge the conviction on constitutional or fundamental grounds." *Skok*, 361 Md. at 78.

Third, and in any event, we decline, as a matter of Maryland common law, to undermine completely the procedural benefit the General Assembly bestowed upon convicted defendants by its enactment of CP § 8-401. We would eviscerate the beneficent purpose of that statute if we were to hold that a person, suddenly faced with the serious collateral consequence of removal from this country, and with "sound reasons for the

35

failure to seek relief earlier[,]" *Skok*, 361 Md. at 73 (citation omitted), is foreclosed even from *seeking* the extraordinary relief afforded by the common law remedy of coram nobis simply by having failed to pursue an earlier-available avenue of relief, the opportunity for which closed before the reason for seeking such relief became manifest. In this context we borrow the words written by Judge Irma Raker in her dissent in *Holmes*, which former Chief Judge Robert Bell and Judge Clayton Greene joined: To hold with the State's waiver argument in the present case would "cut[] the heart out of the writ of coram nobis in Maryland." 401 Md. at 475 (Raker, J., dissenting).[13]

## II.

### *Is Smith Entitled to have her Guilty Plea Vacated?*

Because we hold that CP § 8-401 applies retrospectively, and that Smith did not otherwise waive her right to file the Petition, consideration of the merits of the Petition is in order. The State seeks reversal of the holding of the Court of Special Appeals that Smith's guilty plea conviction must be vacated. The intermediate appellate court's holding rested on the ground that, because the record of the plea hearing shows that Smith was not informed of the nature of the crime of conspiracy to which she pleaded guilty, she did not knowingly and intelligently enter the plea. The State acknowledges, as it must, that a guilty plea is valid only if the court before whom the plea was presented has complied with the

_____

[13] For the same reasons that Smith did not waive her entitlement to coram nobis relief by failing to pursue the earlier available remedy of post-conviction, she also did not waive her entitlement to such relief by not moving, post sentencing, to withdraw the plea.

36

clear and unequivocal dictates of Maryland Rule 4-242(c). At the time of Smith's guilty

plea, Rule 4-242(c) read, in pertinent part:[14]

> **Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. . . .

The State argues that Smith's plea satisfies the dictates of the Rule, but not because the

record developed at the plea hearing reflected compliance. Indeed, as we shall see, the

transcript of the plea hearing demonstrates noncompliance with the Rule. Instead, the State

would have us look to what took place nearly ten years later, at the hearing on the Petition.

At that time, the coram nobis court, after hearing the testimony of Smith and attorney

Suissa and reviewing the record of the plea hearing, found as a fact that Suissa sufficiently

discussed with Smith the crime of conspiracy, presumably at some time prior to the plea

hearing itself.

Smith counters that the Court of Special Appeals correctly looked only to the record

of the plea hearing itself in holding that Rule 4-242(c) was violated. For the reasons

discussed below, Smith has the better part of the argument.

### A. Guilty pleas, the Constitution, and the Rules

---

[14] In 2007, this Court amended Maryland Rule 4-242(c) to add that the court must not only determine but also "**announce[] on the record** that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea . . . ." (Emphasis added.)

37

Forty-six years ago, the Supreme Court decided two cases, *McCarthy v. United States*, 394 U.S. 459 (1969), and *Boykin v. Alabama*, 395 U.S. 238 (1969), which together inform much of our analysis. The Court issued *McCarthy* first and *Boykin* two months later. Both decisions recognize that a defendant who pleads guilty forgoes a bundle of important rights afforded by the Constitution of the United States: the right to a fair trial by jury; the right to have every element of the crime be proven beyond a reasonable doubt; the right to silence; and the right to confront adverse witnesses. *See McCarthy*, 394 U.S. at 456; *Boykin*, 395 U.S. at 243. Consequently, the guilty plea must be accompanied by the "intentional relinquishment or abandonment of [those] known right[s] or privilege[s]." *Boykin*, 395 U.S. at 243 n.5 (quoting *Johnson,* 304 U.S. at 464).

The Supreme Court decided *McCarthy* in the exercise of the Court's supervisory authority over the federal courts. McCarthy had pleaded guilty to one of three counts charging him with "willfully and knowingly" attempting to evade federal income tax payments. 394 U.S. at 460−61. The Court discussed the constitutional requirements of a valid plea, but decided the case by resorting to Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11"), which then, and now, prescribes the procedural requirements in federal courts for taking a guilty plea. Rule 11 required at the time (and still requires) that the plea judge personally engage the defendant so as to ascertain whether the defendant knowingly and voluntarily enters into the plea. The version of Rule 11 in effect at that time read:

> A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first

addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

The *McCarthy* Court noted the two purposes of the Rule:

First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that the defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*Id*. at 465 (footnote omitted).

The Supreme Court recognized that the two purposes of the requirement that the judge personally interrogate the defendant "have their genesis in the nature of a guilty plea." *Id*. at 466. Yet, the Court decided the case "based solely upon our construction of Rule 11 . . . ; we do not reach any of the constitutional arguments petitioner urges as additional grounds for reversal." *Id*. at 464. The Court concluded that the District Judge had accepted McCarthy's plea without complying with Rule 11, and the Court held that "a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." *Id.* at 463−64.

The Supreme Court decided *Boykin* shortly thereafter. The case involved a challenge on federal constitutional grounds to a conviction in an Alabama state court,

39

thereby giving the Court a platform for instructing the state courts of the federal constitutional requirements of a valid guilty plea. Boykin had pleaded guilty to five counts of common law robbery, which at the time subjected him to the death penalty. *Boykin*, 395 U.S. at 239−40. The record of the plea hearing showed that the judge who accepted the plea "asked no questions of petitioner concerning his plea, and petitioner did not address the court." *Id.* at 239.

The *Boykin* Court concluded that it was "error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Id*. at 242. The Court observed that

> [s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.

*Id*. at 243 (citations omitted). Rather, as with the waiver of other constitutional rights, "the record must show" that the defendant has been informed of the rights he is waiving by pleading guilty and, armed with that knowledge, makes a knowing and voluntary waiver of those rights. *See id*. at 242−43.

In so holding, the *Boykin* Court made clear its concern that, in the context of a guilty plea, "[i]gnorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." *Id*. at 242−43. The Court added:

> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with

40

the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought, and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

*Id*. at 243−44 (footnotes and citations omitted).

*McCarthy* and *Boykin* were followed seven years later by *Henderson v. Morgan*, 426 U.S. 637 (1976). That case came to the Court on federal habeas review of a state court conviction. *Id*. at 639. The conviction was obtained as the result of a guilty plea that Morgan sought to have overturned in a federal habeas corpus action because the plea colloquy did not describe the elements of the crime to which he had pleaded guilty. *Id*. Morgan argued that, without knowledge of the elements and nature of the crime to which he pleaded guilty, the plea itself was rendered involuntary. *Id*. The Supreme Court agreed, reasoning that

[a] plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

*Id*. at 645 n.13 (citations omitted).

The Supreme Court has not departed from the view that a guilty plea satisfies due process only if the individual entering into the plea has done so voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United*

*States*, 397 U.S. 742, 748 (1970)).  *Bradshaw*, like *Boykin* and *Henderson* before it, had its

genesis in a guilty plea that emanated from a proceeding held in state court.  *Id.* at 179.

The *Bradshaw* Court clarified that, for purposes of satisfying federal due process

demands, the plea colloquy need not be conducted by the plea judge directly, and the

proceeding at which the guilty plea is taken need not be the sole source for determining

compliance with due process:

> While the court taking a defendant's plea is responsible for ensuring "a record adequate for any review that may be later sought," *Boykin v. Alabama*, 395 U.S. 238, 244 (1969) (footnote omitted), we have never held that the judge must himself explain the elements of each charge to the defendant on the record.  Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. Cf. *Henderson, supra*, at 647 (granting relief to a defendant unaware of the elements of his crime, but distinguishing that case from others where "the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused").  Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.

545 U.S. at 183.

It is important to recognize the distinction between *McCarthy*, which rested solely

on the dictates of the then-applicable version of Rule 11,[15] and *Boykin*, which set the federal

---

[15] Rule 11 has undergone significant amendment in the years since *McCarthy*.  The current version of the Rule 11(b) reads:
> **(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**
> **(1) Advising and Questioning the Defendant.** Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court.  During

this address, the court must inform the defendant of, and determine that the defendant understands, the following:

    **(A)** the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

    **(B)** the right to plead not guilty, or having already so pleaded, to persist in that plea;

    **(C)** the right to a jury trial;

    **(D)** the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

    **(E)** the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

    **(F)** the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

    **(G)** the nature of each charge to which the defendant is pleading;

    **(H)** any maximum possible penalty, including imprisonment, fine, and term of supervised release;

    **(I)** any mandatory minimum penalty;

    **(J)** any applicable forfeiture;

    **(K)** the court's authority to order restitution;

    **(L)** the court's obligation to impose a special assessment;

    **(M)** in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

    **(N)** the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

    **(O)** that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**(2) Ensuring That a Plea Is Voluntary.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

**(3) Determining the Factual Basis for a Plea.** Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

constitutional benchmark for a valid guilty plea, and *Henderson* and *Bradshaw*, which

provided additional gloss on the federal constitutional principles announced in *Boykin*. The

latter three decisions set the minimum prerequisites, guaranteed by the Constitution of the

United States, for a valid guilty plea. Those decisions, though, leave the states free to adopt

their own rules of procedure for the taking of guilty pleas that require greater protections

than those afforded under the federal constitution.

## B. Maryland's guilty plea rule

At the time *Boykin* was decided, Maryland, unlike the federal courts, had no Rule

of Procedure governing the taking of guilty pleas. With *Boykin* on the books, however, it

took but a few years for Maryland to adopt its own version of the then-extant version of

Rule 11. This Court promulgated Maryland Rule 731 in 1977, section (c) of which set

forth the requirements of an on-the-record colloquy between the court and defendant that

must precede the court's acceptance of the plea. Maryland Rule 731(c) provided in

pertinent part:

> The court may not accept a plea of guilty without first questioning the
> defendant on the record to determine that the plea is made voluntarily, with

Rule 11's extensive list of requirements the plea judge is charged with satisfying far exceeds that of Maryland Rule 4-242(c), and extends beyond the dictates of *Boykin*. Rule 11 also contains a provision, section (h), which provides that non-substantive violations of Rule 11 do not require vacation of the plea. Subpart (h) reads: "**Harmless Error.** A variance from the requirements of this rule is harmless error *if it does not affect substantial rights*." (Emphasis added). *See United States v. Vonn*, 535 U.S. 55 (2002) (construing Rule 11(h) and holding that unobjected-to error in the trial court's guilty plea colloquy was reversible error only upon a showing by the defendant that such error was plain and affected the defendant's substantial rights). In these respects, the federal rule varies significantly from Maryland Rule 4-242(c).

understanding of the nature of the charge and the consequences of the plea. The court may accept the plea of guilty even though the defendant does not admit that he is in fact guilty if the court is satisfied that there is a factual basis for the plea. . . .

It is not happenstance that the text of Rule 731(c) is nearly identical to the language of the version of Rule 11 in effect at the time of *McCarthy*. Indeed, the "legislative" history of the Rules Committee cites Rule 11 as the source for the Rule. At the time of Smith's plea, Rule 4-242(c) read:

> **Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. . . .

Maryland Rule 4-242(c) lays out in plain and unequivocal terms what is demanded of a valid guilty plea. The Rule gives full effect to the constitutional protections recognized in *McCarthy*, embodied in Rule 11, and expressly afforded by the Supreme Court in *Boykin*, *Henderson*, and *Bradshaw*. But the dictates of the then-applicable Rule 4-242(c) go further: the court may not accept the plea until the defendant has been examined on the record and the court *determines* both that the defendant understands the nature of the charge and consequences of the plea and is entering the plea voluntarily and that there is a factual basis for the plea.[16]

---

[16] As previously noted, see *supra* n.12, current Rule 4-242(c) requires the court both to "determine[] and announce[] on the record" that the plea requirements laid out in that section are met.

45

This Court, moreover, requires strict adherence to the explicit dictates of Rule 4-242(c).  *See Cuffley v. State*, 416 Md. 568, 582 (2010).  By its express wording, the rule reflects its underlying purposes, not simply for compliance with federal constitutional requisites for a valid plea, but also to serve as a clear, contemporaneous record of such compliance.

The Court made all this clear most recently in *State v. Daughtry*, 419 Md. 35 (2011).  The case came to us upon our grant of *certiorari* to review the judgment of the Court of Special Appeals, following its acceptance of Daughtry's application for leave to appeal the judgment of conviction based on his plea of guilty.  *Id.* at 42.  Daughtry argued that the plea was accepted in violation of Rule 4-242(c) because the record developed at the plea hearing did not demonstrate that he had been sufficiently apprised of the nature of one of the charges to which he had pleaded guilty—first-degree murder.

We agreed with Daughtry.  We declared that, "in determining whether a defendant understood the nature of the charge to which he pleaded guilty, we may look only to the record as a whole that was before the trial judge during that proceeding."  *Id*. at 80 n.31 (internal citation and quotation omitted).  We emphasized that we cannot presume that a guilty plea is knowing and voluntary when "the only evidence proffered to show that a defendant is aware of the nature of the charges against him is the fact that he or she is represented by an attorney and that the defendant discussed the plea with his or her attorney[.]" *Id*. at 69.  We further recognized that the complex nature of some crimes, first-degree murder among them, demands some explanation beyond simply pronouncement of the name of the crime.  We were guided in that regard by *State v. Priet,* in which we held

46

that the court, in determining whether a guilty plea is knowing and voluntary, should consider "the complexity of the charge[.]" 289 Md. 267, 288 (1981).

Although in *Daughtry* we declined to enumerate all the crimes that qualify as complex, 419 Md. at 72−73, we counted conspiracy as among those crimes that are not "readily understandable from the label of the crime itself," *id*. at 72 n.19, 73. Accordingly, "the elements of a conspiracy charge should be explained by the judge to the defendant." *Id*. (quoting Wayne R. LaFave et al., Criminal Procedure § 21.4(c) (3d ed. 2007)).

We then looked "to the record as a whole that was before the trial judge during [the plea] proceeding[,]" *id*. at 80 n.31 (internal quotations omitted), to conclude that the plea was invalid because Daughtry had not been informed of the nature of charge. He had been asked only one question on the entire subject of whether his plea was knowing and voluntary: "Have you talked over your plea with your lawyer?" *Id*. at 70. We observed in that regard: "[W]here the record reflects nothing more than the fact that a defendant is represented by counsel (as in the present case) and that the defendant discussed generically the plea with his or her attorney, such a plea colloquy is deficient under Rule 4-242(c), and the plea must be vacated." *Id*. at 71. We further observed that the prosecutor's proffered factual basis for the plea did not make clear the nature of the crime to which Daughtry pleaded guilty. *Id*. at 74−75.

Similarly, here, the plea judge asked Smith only two questions relevant to the voluntariness of her plea agreement: "Are you pleading guilty freely and voluntarily?" and "Are you satisfied with the help of your attorney?" Moreover, the court did not ask any questions concerning whether Smith understood the nature of the charge to which she was

pleading guilty. Likewise, nothing in the prosecutor's proffer of the factual basis for the plea even intimated at either the elements or essential nature of the crime of conspiracy, i.e., "the agreement between two or more people to achieve some unlawful purpose or to employ unlawful means in achieving a lawful purpose." *State v. Payne*, 440 Md. 680, 712 (2014) (quoting *State v. Johnson*, 367 Md. 418, 424 (2002)).

As in *Daughtry*, it cannot fairly be concluded, upon examination of the totality of the plea hearing record, that Smith understood the essential nature of the conspiracy charge to which she had pleaded guilty. Smith therefore has carried her burden of proving her entitlement to coram nobis relief on the ground that her plea was unknowing and involuntary, in that she was not informed, on the record at the time of the plea, of the elements of the crime to which she pleaded guilty.

The State insists that Smith's guilty plea must remain undisturbed, no matter the violation of the part of Rule 4-242(c) that mandates a determination by the court that the defendant is informed of the nature of the crime to which the defendant is pleading guilty. The State maintains that Smith is not entitled to such relief because the findings of the coram nobis judge support the conclusion that Suissa, Smith's counsel at the plea hearing, in fact had discussed the conspiracy charge with Smith. Even so, any such discussion outside the plea hearing record, while arguably enough to satisfy the federal constitutional minimum of due process accorded under *Bradshaw,* should not carry the day under Rule 4-242(c). Again, the Rule requires more: the record of the plea itself must be such as to permit a *meaningful* determination by the court before whom the plea is presented that the defendant's plea is knowing and voluntary in that the defendant has had explained to him

48

or her the rights that are forgone by the plea of guilty and willingly foregoes them; has had the nature of the crime addressed such that the defendant understands that to which he or she is pleading guilty; and that the facts support the plea.

Smith's plea was obtained in violation of the explicit dictates of Rule 4-242(c), the purpose of which is to satisfy, as best as reasonably can be done, the due process protections secured under *Boykin* and its progeny. Plainly, Rule 4-242(c) is not like many other rules that prescribe the conduct of pre-trial, trial, and post-trial proceedings. Rule 4-242(c) violations of the sort presented in this case are quintessentially of "constitutional or fundamental character," *see Skok*, 361 Md. at 78, and therefore appropriate for coram nobis relief. Furthermore, as we noted earlier in this opinion, we gave every indication in *Skok* itself that a violation of Maryland Rule 4-242(c) would be sufficient to warrant coram nobis relief. *See id.* at 80−81. Indeed, it is nonsensical to require compliance with the dictates of the Rule, and to grant appellate relief when violations of the Rule occur, yet excuse noncompliance with the express mandates of the Rule on collateral attack, whether in post conviction or, as here, coram nobis.

Therefore, regardless when a claim of a Rule 4-242(c) violation is made—whether on direct appellate review, on state post-conviction relief, or by way of a petition for writ of error coram nobis—the claim should be assessed by relying on the totality of the record developed at the plea hearing. A guilty plea should be vacated if the record of the plea hearing discloses a failure of compliance with the dictates of the Rule, which embodies the federal due process requirements of a knowing and voluntary plea of guilty.

Based on the plea transcript, Smith's guilty plea was not knowing and voluntary and, thus, the judgment of the Court of Special Appeals ought to be affirmed.

Circuit Court for Montgomery County
Case No. 96240C

Argued: December 10, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 47

September Term, 2014

_____

STATE OF MARYLAND

v.

KERRYANN N. SMITH

_____

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Watts, J., joined in Part I by Harrell
and Battaglia, JJ., and joined in Part II by
Harrell, Battaglia, and McDonald, JJ.

_____

Filed: July 13, 2015

*Harrell, J., participated in the hearing of the
case, in the conference in regard to its decision
and in the adoption of the opinion but he retired
from the Court prior to the filing of the opinion.

Respectfully, I dissent as to Part I of the Majority opinion. For the reasons in Part I of this opinion, I would hold that Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2014 Supp.) ("CP") § 8-401 applies prospectively to petitions for coram nobis relief as to convictions that occurred on or after October 1, 2012, the statute's effective date; thus, Kerryann N. Smith ("Smith"), Respondent, waived the right to coram nobis relief by failing to apply for leave to appeal, and independent of CP § 8-401, by failing to petition for post-conviction relief under the Maryland Uniform Postconviction Procedure Act.

As to whether Smith's guilty plea was knowing and voluntary, in Part II of this opinion, this Court holds that Smith's guilty plea was knowingly and voluntarily made, and that testimony from Smith's counsel concerning having advised Smith prior to the guilty plea of the nature of the charges against her was admissible at the coram nobis hearing for the purpose of determining whether Respondent pled "voluntarily, with understanding of the nature of the charge" within the meaning of Maryland Rule 4-242(c).

## DISCUSSION

### I.

A statute is presumed to apply prospectively unless the General Assembly clearly intended the statute to apply retroactively. Here, there is no clear legislative intent that the General Assembly intended CP § 8-401 to apply retroactively. Thus, I would hold that CP § 8-401 applies prospectively.

### *Coram Nobis Relief*

Coram nobis is extraordinary relief designed to relieve a petitioner of substantial collateral consequences outside of a sentence of incarceration or probation where no other

remedy exists. "[T]he writ of error coram nobis is an ancient common law device traditionally utilized to correct errors of fact." Rivera v. State, 409 Md. 176, 189-90, 973 A.2d 218, 227 (2009) (citation omitted). "The purpose of the writ is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment." Skok v. State, 361 Md. 52, 68, 760 A.2d 647, 655 (2000) (citation omitted).

In Skok, id. at 75, 78, 760 A.2d at 659, 661, we expanded the scope of coram nobis relief, holding that coram nobis applies to both errors of fact and errors of law "on constitutional or fundamental grounds." We explained: "[T]here should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds." Id. at 78, 760 A.2d at 661. We added, however: (1) "the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental character[,]" id. at 78, 760 A.2d at 661; (2) "a presumption of regularity attaches to the criminal case, and the burden of proof is on the coram nobis petitioner[,]" id. at 78, 760 A.2d at 661; (3) "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction[,]" id. at 79, 760 A.2d at 661; (4) the issue raised in a coram nobis action must not be waived or finally litigated, see id. at 79, 760 A.2d at 661-62; and (5) there must not be another statutory or common law remedy available, see id. at 80, 760 A.2d at 662.

*Waiver*

As to waiver, in <u>Skok</u>, <u>id.</u> at 79, 760 A.2d at 661-62, we explained:

Basic principles of waiver are applicable to issues raised in coram nobis proceedings. . . . [T]he same body of law concerning waiver . . ., which is applicable under the Maryland [Uniform] Post[c]onviction Procedure Act, Code (1957, 1996 Repl. Vol., 1999 Supp.), Art. 27, § 645A (b) through (d)[1] shall be applicable to a coram nobis proceeding challenging a criminal conviction.

(Citations omitted). Later, in <u>Holmes v. State</u>, 401 Md. 429, 445-46, 932 A.2d 698, 708 (2007), we again addressed waiver in a coram nobis proceeding, holding:

[I]f an individual who pleads guilty, having been informed of his right to [apply] for leave to appeal from his conviction and sentence, does not file such an application [], a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding.

*CP § 8-401*

On February 29, 2012, House Bill 1418 (which eventually became CP § 8-401) was introduced. House Bill 1418's Fiscal and Policy Note stated that House Bill 1418

---

[1]On October 1, 2001, Art. 27, § 645A (b) through (d) was recodified as CP § 7-106(b), which provides, in pertinent part:

(1) (i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . 4. in an application for leave to appeal a conviction based on a guilty plea; . . . (ii)  1. Failure to make an allegation of error shall be excused if special circumstances exist.  2. The petitioner has the burden of proving that special circumstances exist.

(2) When a petitioner could have made an allegation of error at a proceeding set forth in (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation.

(Some paragraph breaks omitted).

- 3 -

"establishes that the failure to seek an appeal in a criminal case may not be construed as a

waiver of the right to file a petition for a writ of error *coram nobis*[,]" and provided the

following in the "Analysis" section:

> **Current Law/Background:** Under the English common law, a writ of error
> *coram nobis* was a remedy allowing a court to correct an error in fact. The
> writ was used ". . . to bring before the court facts which were not brought
> into issue at the trial of the case, and which were material to the validity and
> regularity of the proceedings, and which if known by the court, would have
> prevented the judgment." *Skok v. State*, 361 Md. 52, 68 (2000) (*quoting
> Madison v. State*, 205 Md. 425, 432 (1954)[)]. In *Skok v. State*, the Court of
> Appeals extended the writ of error *coram nobis* to apply to errors in law. See
> Skok at 78.
>
> A petition for a writ or error *coram nobis* ". . . provides a remedy for a person
> who is not incarcerated and not on parole or probation, who is faced with a
> significant collateral consequence of his or her conviction, and who can
> legitimately challenge the conviction on constitutional [or fundamental]
> grounds." *Parker v. State*, 160 M[d. App]. 672, 677 (2005) (*citing Skok* at
> 78). The petitioner bears the burden of proof ". . . to show that the grounds
> for challenging the criminal conviction are of a constitutional, jurisdictional,
> or fundamental character; that the petitioner is suffering or facing significant
> collateral consequences from the conviction; and that there is no other
> statutory or common law remedy available." See Parker at 678 (*citing Skok*
> at 78-80).
>
> In *Holmes v. State*, 401 Md. 429 (2007), the Court of Appeals held that there
> is a rebuttable presumption an individual waives his/her right to file a petition
> for a writ of error *coram nobis* if he/she enters a guilty plea and does not
> [apply] for leave to appeal despite having been informed of his/her right to
> file the application, unless the individual can demonstrate that there are
> special circumstances to excuse his/her failure to file the application for leave
> to appeal.
>
> Under Maryland Rule 15-1202, an action for a writ of error *coram nobis* is
> commenced by the filing of a petition in the court where the conviction took
> place.

Fiscal and Policy Note, House Bill 1418 (2012 Session, Maryland General Assembly),

<u>available at</u> http://mgaleg.maryland.gov/2012rs/fnotes/bil_0008/hb1418.pdf.[2]

The House of Delegates and the Senate passed House Bill 1418 without amendment, and the Governor signed House Bill 1418 on May 2, 2012. <u>See</u> 2012 Md. Laws 2947, 2947-48 (Ch. 437, H.B. 1418). Chapter 437 stated that its purpose was "providing that the failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis; and generally relating to coram nobis." <u>Id.</u> at 2947. Chapter 437 also provided that it would "take effect October 1, 2012[,]" <u>id.</u> at 2948, which was while Smith's coram nobis proceeding was pending in the circuit court. Unabridged, CP § 8-401 states: "The failure to seek an appeal in a criminal case may not

---

[2]House Bill 1418's Bill File is sparse. It includes a letter dated January 28, 2012, from George Harper, a lawyer who urged the Chairman of the House Judiciary Committee to "undo[]" the "pernicious decision" of <u>Holmes</u>, 401 Md. 429, 932 A.2d 698. Specifically, the lawyer stated: "All that is necessary to vitiate Holmes is to legislate the following: 'The failure to file a petition for leave to file an appeal shall not be construed as a waiver of the right to file a petition for writ of error coram nobis.'" (Paragraph break and emphasis omitted). House Bill 1418's Bill File also contains: (1) a letter dated March 30, 2012, from John J. McCarthy, State's Attorney for Montgomery County, who advised the Senate Judicial Proceedings Committee that House Bill 1418 was "unnecessary" given then-existing law because "[a] waiver [could] only be found, if at all, for allegations of error that could have been raised on appeal, but were not"; (2) a letter dated April 3, 2012, from Scott D. Shellenberger, the State's Attorney for Baltimore County, who urged the Senate Judicial Proceedings Committee to give an unfavorable report to House Bill 1418 because it "could be interpreted to remove the legal principle of waiver from coram nobis proceedings or any issue raised in coram nobis"; (3) a copy of House Bill 1418 as read for the third time before the House of Delegates; (4) House Bill 1418's Floor Report, which includes the same language as House Bill 1418's Fiscal and Policy Note and indicates that the Committee gave a favorable report to House Bill 1418; and (5) the House Judiciary Committee's Voting Record on House Bill 1418.

be construed as a waiver of the right to file a petition for writ of error coram nobis."[3]

### *Retroactive vs. Prospective Application*

As to whether a statute applies retroactively or prospectively, in Langston v. Riffe, 359 Md. 396, 406, 754 A.2d 389, 394 (2000), we stated the question "ordinarily is one of legislative intent" and that, "[i]n determining such intent . . ., there is a general presumption in the law that an enactment is intended to have purely prospective effect. In the absence of clear legislative intent to the contrary, a statute is not given retro[a]ctive effect." (Citation and internal quotation marks omitted). In Pautsch v. Md. Real Estate Comm'n, 423 Md. 229, 263, 31 A.3d 489, 509 (2011), we observed that we "have long adhered to four principles" concerning retroactivity of statutes:

> (1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

(Citation omitted). From these principles, we devised the following two-part test: (1) "we

---

[3]In Miller v. State, 435 Md. 174, 186, 77 A.3d 1030, 1037 (2013), decided after CP § 8-401's effective date, this Court approvingly cited Holmes, 401 Md. at 442, 454-55, 932 A.2d at 706, 714, for the following proposition of law:

> The waiver standards embodied in the [Maryland Uniform] Post[c]onviction Procedure Act apply to coram nobis proceedings, therefore, the same body of law concerning waiver and final litigation of an issue, which is applicable under the Maryland [Uniform] Post[c]onviction Procedure Act . . . is applicable to a coram nobis proceeding challenging a criminal conviction.

(Brackets and internal quotation marks omitted) (ellipsis in original).

- 6 -

must determine whether the [General Assembly] intended the statute to have the kind of retroactive effect that is asserted"; and (2) "[i]f we conclude that the [General Assembly] *did* intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional right or prohibition." Pautsch, id. at 263-64, 31 A.3d at 510 (citation omitted) (emphasis in original).

### *Exceptions to the Presumption of Prospective Application*

There are two important "exceptions to the presumption that legislation is to be applied prospectively": (1) "legislative enactments that apply to procedural changes[,]" as "a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions whether accrued, pending or future, unless a contrary intention is expressed"; and (2) "[l]egislative enactments that have remedial effect and do not impair vested rights[.]" Gregg v. State, 409 Md. 698, 714-15, 976 A.2d 999, 1008 (2009) (citations and internal quotation marks omitted); see also Langston, 359 Md. at 406-09, 754 A.2d at 394-95.

"[A] law is substantive if it creates rights, duties[,] and obligations, while a remedial or procedural law simply prescribes the methods of enforcement of those rights." Langston, 359 Md. at 419, 754 A.2d at 401 (citation and internal quotation marks omitted). We have explained:

> Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes[,] and omissions in the civil institutions and the administration of the state. The definition of a remedial statute has also been stated as a statute that relates to practice, procedure, or remedies and does not affect substantive or vested rights . . . .

> [A]n act is remedial in nature when it provides only for a new method of enforcement of a preexisting right . . . . [S]tatutes are remedial in nature if they are designed to correct existing law, to redress existing grievances[,] and to introduce regulations conducive to the public good.

Id. at 408-09, 754 A.2d at 395-96 (citations and internal quotation marks omitted).

In Langston, id. at 403, 417-18, 754 A.2d at 392, 400, we held that Md. Code Ann., Fam. Law (1984, 1999 Repl. Vol.) § 5-1038(a)(2)(i)2, "which allows trial courts to set aside or modify a paternity declaration when genetic or blood testing establishes that the putative father is not the actual father," was remedial and procedural. We stated that the statute's extensive legislative history demonstrated the General Assembly's clear intent that the statute be remedial because the statute expanded "the equitable grounds on which a court may relieve from the effect of a paternity judgment an adjudged father who later has been determined not to be the biological father of the child in question" and "restore[d] that provision to its originally intended purpose by providing putative fathers with an additional procedure or remedy to challenge prior paternity declarations." Id. at 417-18, 754 A.2d at 400. (Citations and internal quotation marks omitted).

In Gregg, 409 Md. at 701, 715-16, 976 A.2d at 1000-01, 1008-09, we held that an amendment to CP § 8-201, which permits "persons convicted of serious crimes to pursue DNA testing of physical evidence, in the possession of the State, that might prove exculpatory or mitigating and result in a new trial or sentencing[,]" was remedial and procedural, because the amendment "prescribes the standard by which the court assesses a petitioner's entitlement to postconviction DNA testing and [] improves the existing remedy by making it easier for qualifying petitioners to establish entitlement to such testing." We

noted that the General Assembly did not state that the amendment would "apply only to persons convicted on or after its effective date." Id. at 715-16, 976 A.2d at 1009. See also Thompson v. State, 411 Md. 664, 667, 680, 985 A.2d 32, 33, 41 (2009) (We held that amendments to CP § 8-201, "granting expanded remedies to certain convicted persons based on DNA evidence[,]" applied retroactively because the new provisions, which provided for a right of appeal, were "remedial in nature as they allow [the petitioner] to reach the substantive issue of guilt by lowering the bar to obtaining a new trial and according greater access to this Court.").

In Doe v. Roe, 419 Md. 687, 688-89, 703-04, 20 A.3d 787, 788, 797-98 (2011), we held that Md. Code Ann., Cts. & Jud. Proc. (1974, 2006 Repl. Vol.) ("CJP") § 5-117, which was "enacted in 2003 expressly to extend from three years to seven years the statute of limitations for civil claims stemming from alleged child sexual abuse[,]" was remedial and procedural, explaining:

> The extended limitations period improves remedies already existing for the enforcement of rights and the redress of injuries, as an extended period of time during which alleged victims of child sexual abuse may seek redress in the courts improves the child's right to seek compensation for the alleged wrongs committed against him or her. Further, it may be said fairly that [CJP] § 5-117 is designed to correct then-existing law, and to introduce regulations conducive to the public good, as the legislative history of the statute reflects that the extended limitations period—both in Maryland and in other jurisdictions—was passed (at least in part) in response to the outcry and evolving understanding of childhood sexual abuse. Finally, in concluding that—at least as applied to causes of action not-yet barred by the generally-applicable three-year limitations period—[CJP] § 5-117 is a remedial and procedural statute, we are in accord with the overwhelming majority of jurisdictions that hold that a change to a limitations period— when applied to claims not-yet-barred by the previous limitations period—is procedural or remedial in nature.

(Citations, brackets, footnotes, and internal quotation marks omitted).

By contrast, in <u>Mason v. State</u>, 309 Md. 215, 217-18, 222, 522 A.2d 1344, 1344-45, 1347 (1987), we held that an amendment to a statute, which limited a person to filing no more than two post-conviction petitions, was "to be afforded a purely prospective application[.]" We explained that, "rather than to extinguish rights acquired by petitioners prior to the effective date of the amendment, we [saw] the legislative design as permitting two, but no more than two, petitions after [the effective date] involving convictions arising out of any one trial, without regard to the number of petitions filed prior to the effective date[.]" <u>Id.</u> at 222, 522 A.2d at 1347 (citations omitted).

Similarly, in <u>Johnson v. Mayor and City Council of Balt.</u>, 430 Md. 368, 371-72, 393-94, 61 A.3d 33, 34-35, 48 (2013), we held that amendments to Md. Code Ann., Lab. & Empl. (1999, 2008 Repl. Vol., 2012 Supp.) ("LE") § 9-503(e), which permitted "the surviving dependents of a firefighter who died from an occupational disease to collect both pension and worker's compensation death benefits after the firefighter's death, up to the amount of what had been the firefighter's weekly salary[,]" did not apply retroactively because they substantively changed the law. Before the amendments' enactment, "dependents who wished to collect pension survivorship benefits and worker's compensation benefits had the total amount of the deceased workers' compensation benefits reduced by the amount of the pension benefits under [LE] § 9-610." <u>Id.</u> at 372, 61 A.3d at 35 (footnote omitted). We noted that it was difficult to categorize the amendments to LE § 9-503(e) as remedial, explaining:

Here, dependents did not have a right to claim dual benefits until the General

Assembly amended the statute in 2007. . . . [T]he amendments . . . are, at bottom, substantive. They create a new class of people who are entitled to collect dual workers' compensation and pension benefits who were not able to do so previously.

Id. at 387, 61 A.3d at 44 (citation and internal quotation marks omitted) (second ellipsis in original). We concluded that the legislative history did "not support viewing the 2007 changes as being remedial or procedural," and held that "expanding the class of people who are able to collect dual benefits is a substantive change in the law[.]" Id. at 393, 61 A.3d at 48.

Even if a statute is procedural or remedial, "this does not completely address whether th[e] statute may be applied retroactively. Generally, a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights." Langston, 359 Md. at 418, 754 A.2d at 400; see also Rawlings v. Rawlings, 362 Md. 535, 559-60, 766 A.2d 98, 112 (2001) ("Stated otherwise, in the final part of a retroactivity analysis, a court must determine whether the retroactive application of the statute or ordinance would interfere with vested rights." (Citation, brackets, and internal quotation marks omitted)). A vested right "means simply a right which under particular circumstances will be protected from legislative interference. . . . [A] vested right is an immediate right of present enjoyment or a present fixed right of future enjoyment." Langston, 359 Md. at 420, 754 A.2d at 401 (citations omitted).

For example, in Langston, 359 Md. at 420, 754 A.2d at 402, after determining that the statute at issue was procedural and remedial, we held that the statute did not "interfere with any substantive or vested rights[.]" We observed that, "[a]s to substantive rights, the

- 11 -

legislation does not grant or create any new right to putative fathers to challenge paternity declarations against them. Rather, the Act provides new methods or procedures a putative father can use to require a court to set aside an erroneous paternity declaration." Id. at 420, 754 A.2d at 402.

*Analysis*

Upon thorough review of the applicable principles and authorities, I would hold that CP § 8-401 applies prospectively. As to whether the presumption of prospective application is overcome by the clear intent of the General Assembly that the law apply retroactively, I would begin by examining CP § 8-401's language. See Pautsch, 423 Md. at 263, 31 A.3d at 509 ("[S]tatutes are presumed to operate prospectively unless a contrary intent appears[.]" (Citation omitted)). Unabridged, CP § 8-401 states: "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." Neither CP § 8-401's language nor the effective date clause (*i.e.*, that the CP § 8-401 "shall take effect October 1, 2012") indicates that the General Assembly intended CP § 8-401 to apply retroactively or to cases pending at the time of its enactment. In the absence of any indication that the General Assembly intended CP § 8-401 to apply retroactively, I would decline to read such an intent into CP § 8-401's language.[4]

---

[4]To be sure, if the General Assembly explicitly states in a bill that a statute is to be applied prospectively or retroactively, such language serves as an indication of the General Assembly's intent. Where the General Assembly is silent, however, that silence may not be construed to indicate that the General Assembly intended a statute to apply retroactively, given the general presumption that a statute is "intended to have purely prospective

- 12 -

Smith does not identify anything in CP § 8-401's legislative history indicating that the General Assembly intended for CP § 8-401 to apply retroactively. And, upon independent review of House Bill 1418's Bill File, I find no such indication.

The Majority concludes that the General Assembly intended CP § 8-401 to be both procedural and remedial. Simply put, I disagree. I would determine that CP § 8-401 is neither procedural nor remedial. See Pautsch, 423 Md. at 263, 31 A.3d at 509 ("[A] statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective[.]" (Citation omitted)). CP § 8-401 is not procedural because it does not change the process by which a petitioner files a petition for coram nobis relief or seeks coram nobis relief; nothing in CP § 8-401's legislative history indicates the statute is procedural or remedial; and CP § 8-401 substantially changed the law concerning waiver with respect to coram nobis relief.

CP § 8-401 neither changes the procedures governing the filing or review of a petition for coram nobis relief, provides extra time for the filing of a petition for coram nobis relief, nor provides additional grounds on which a petition for coram nobis relief may be based. Cf. Gregg, 409 Md. at 715-16, 976 A.2d at 1008-09 (An amendment to a statute was procedural because it "prescribe[d] the standard by which the court assesses a petitioner's entitlement to postconviction DNA testing and it improve[d] the existing remedy by making it easier for qualifying petitioners to establish entitlement to such

---

effect[,]" and that, absent a "clear legislative intent to the contrary, a statute is not given retro[a]ctive effect." Langston, 359 Md. at 406, 754 A.2d at 394 (citation and internal quotation marks omitted).

testing."); Langston, 359 Md. at 417, 754 A.2d at 400 (A statute was procedural because it "expand[ed] the procedure for remedying the perceived problem."). The procedures for the filing and handling of a petition for coram nobis relief remain governed by Title 15, Chapter 1200 of the Maryland Rules. See, e.g., Md. R. 15-1202 (The Rule sets forth the requirements for filing, content, and service of petitions for coram nobis relief.). Stated otherwise, CP § 8-401 makes no change to the procedures for the filing, processing, or adjudication of a petition for coram nobis relief.

Nor is CP § 8-401 remedial. CP § 8-401 does not "provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries." Langston, 359 Md. at 408, 754 A.2d at 395 (citation omitted). Obviously, the remedy of coram nobis relief existed long before CP § 8-401's enactment. CP § 8-401 does not facilitate obtaining coram nobis relief by expanding or limiting the procedures through which one petitions for coram nobis relief. Cf. Thompson, 411 Md. at 667, 680, 985 A.2d at 33, 41 (Revisions to a statute which "grant[ed] expanded remedies" were "remedial[.]"). To be sure, a remedial statute may be designed to correct existing law, see Langston, 359 Md. at 409, 754 A.2d at 396; however, a statute is not remedial just because the statute affects an appellate court's holding. To determine whether a statute is remedial, I would look to the statute's legislative history. Cf. Doe, 419 Md. at 703, 20 A.3d at 797 ("[I]t may be said fairly that [the statute] is designed to correct then-existing law, and to introduce regulations conducive to the public good, as the legislative history of the statute reflects that the [statute] . . . was passed (at least in part) in response to the outcry and evolving understanding of childhood sexual abuse." (Internal quotation marks omitted)).

CP § 8-401's legislative history does not indicate that CP § 8-401 is procedural or remedial. House Bill 1418's Bill File is sparse, and includes a letter dated January 28, 2012, from George Harper ("Harper"), who urged the Chairman of the House Judiciary Committee to "undo[]" the "pernicious decision" of Holmes, 401 Md. 429, 932 A.2d 698, by legislating that "'[t]he failure to file a petition for leave to file an appeal shall not be construed as a waiver of the right to file a petition for writ of error coram nobis.'" Approximately one month later, House Bill 1418, whose language was similar to what Harper proposed, was introduced. It is not clear, however, that the House Judiciary Committee relied on Harper's letter in drafting House Bill 1418; indeed, nothing in House Bill 1418's Bill File mentions Harper's letter. Additionally, House Bill 1418's purpose clause does not mention Holmes. Although House Bill 1418's Fiscal and Policy Note mentions Holmes in its recitation of "Current Law/Background," it neither criticizes Holmes nor indicates that House Bill 1418 was a response to Holmes. Furthermore, this Court issued Holmes more than four years before House Bill 1418 was introduced. And, nothing in Chapter 437's purpose clause indicates that CP § 8-401's purpose was to effect a procedural change in the law or to remedy an error in then-existing law. See 2012 Md. Laws 2947, 2947 (Ch. 437, H.B. 1418). Accordingly, I would conclude that, viewed in its entirety, CP § 8-401's legislative history does not support a conclusion that CP § 8-401 was remedial or procedural.

At its core, CP § 8-401 substantively changed the law concerning what may be construed as a waiver of a petitioner's right to coram nobis relief. Before the General Assembly enacted CP § 8-401, individuals seeking coram nobis relief who pled guilty and

had not applied for leave to appeal after being advised of the right to do so were required to rebut the presumption of waiver of the right to challenge the conviction in a coram nobis proceeding and to demonstrate special circumstances excusing the failure to apply for leave to appeal. See Holmes, 401 Md. at 445-46, 932 A.2d at 708. CP § 8-401 essentially created a new class of individuals (or at least significantly expanded the existing class of individuals) who are permitted to seek and potentially obtain coram nobis relief notwithstanding their failure to apply for leave to appeal. These individuals are no longer required to rebut any presumption tied to the failure to apply for leave to appeal or to demonstrate that special circumstances existed to excuse the failure to apply for leave to appeal. Cf. Johnson, 430 Md. at 393, 61 A.3d at 48 ("[E]xpanding the class of people who are able to collect dual benefits is a substantive change in the law[.]").

Significantly, in Doe, 419 Md. at 703-04, 707-08, 20 A.3d at 797-98, 799-800, we held that applying an amended statute of limitations to claims **not yet barred** by the existing statute of limitations is procedural or remedial. Specifically, in Doe, id. at 704, 20 A.3d at 798, we stated that "we are in accord with the overwhelming majority of jurisdictions that hold that a change to a limitations period—when applied to claims not-yet-barred by the previous limitations period—is procedural or remedial in nature." Left unsaid in Doe is that applying a changed statute of limitations to claims **already barred** by the existing statute of limitations would have substantively changed the law. Following this line of reasoning to its obvious conclusion, it is clear that removing the failure to apply for leave to appeal as a bar to coram nobis relief constitutes a substantive change in the law.

- 16 -

Tellingly, the Majority addresses neither <u>Doe</u>'s implications nor the circumstance of the statute creating the ability to pursue coram relief where it did not exist before, perhaps because this most clearly demonstrates that CP § 8-401 is not procedural or remedial. Indeed, when a statute makes it possible for individuals to do something they could not do before—or were barred from doing before—the statute's enactment, the statute effects a substantive change in the law. That is exactly the case here.

In summary, CP § 8-401's legislative history contains insufficient evidence to rebut the presumption that CP § 8-401 applies prospectively. CP § 8-401 substantively changes the law, and is not procedural or remedial. This alone militates against retroactive application.[5]

In accordance with CP § 8-401's effective date, I would hold that CP § 8-401 applies to petitions for coram nobis relief regarding convictions occurring on or after October 1, 2012.[6] Thus, I would determine that CP § 8-401 does not apply to Smith's petition for

---

[5]Because I would conclude that CP § 8-401 is neither procedural nor remedial, I would not address whether CP § 8-401 interferes with a vested or substantive right. Indeed, the Majority's conclusion that CP § 8-401 does not impair any vested right of the State, <u>see</u> Maj. Slip Op. at 19-20, is a red herring. A court examines whether a statute interferes with vested or substantive rights only if the court first determines that the statute is procedural or remedial. <u>See</u> <u>Langston</u>, 359 Md. at 418, 754 A.2d at 400 (Even if a statute is procedural or remedial, "this does not completely address whether th[e] statute may be applied retroactively. Generally, a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights."). Because CP § 8-401 is neither procedural nor remedial, this Court need not reach step two of a retroactivity analysis to determine whether the statute interferes with vested or substantive rights.

[6]The Majority's conclusion that "CP § 8-401 applies to all 'cases pending in court when the statute becomes effective[,]'" Maj. Slip Op. at 20 (quoting <u>Pautsch</u>, 423 Md. at 263, 31 A.3d at 509), necessarily depends on the correctness of its analysis that CP § 8-401 is procedural and remedial. To be sure, in <u>Pautsch</u>, 423 Md. at 263, 31 A.3d at 509,

- 17 -

coram nobis relief, which was based on a conviction that occurred in 2003. Instead, I would conclude that Smith's petition for coram nobis relief is governed by the rebuttable presumption that Smith waived the right to challenge her conviction in a subsequent coram nobis proceeding by failing to apply for leave to appeal. See Holmes, 401 Md. at 445-46, 932 A.2d at 708.

The circuit court was correct in determining that Smith failed to rebut the presumption that she waived her right to coram nobis relief. Contrary to Smith's assertion, the record demonstrates that, at the guilty plea hearing, the circuit court orally advised Smith of her right to apply for leave to appeal. Despite this advice, Smith failed to apply for leave to appeal. At the coram nobis proceeding, Smith failed to demonstrate that special circumstances excused her failure to apply for leave to appeal. Cf. Holmes, 401 Md. at 445-46, 932 A.2d at 708 ("Because [the defendant] did not rebut the presumption of waiver, nor demonstrate 'special circumstances' to excuse his failure to [apply] for leave to appeal, his right to challenge his conviction and sentence through a writ of error coram nobis petition was waived.").

More troubling than the finding of retroactivity with respect to CP § 8-401 is the Majority's conclusion that Smith's failure to pursue post-conviction relief when it was available to her does not constitute a waiver of the right to pursue coram nobis relief. See

---

this Court stated that "a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective[.]" (Citation omitted). As discussed above, however, CP § 8-401 is neither procedural nor remedial and, accordingly, application of the principle espoused in Pautsch is unwarranted.

Maj. Slip Op. at 2, 26.[7]   Indeed, I agree with the State that, independent of CP § 8-401, Smith is ineligible for coram nobis relief because she failed to file a petition for post-conviction relief—a remedy that was available to her while she was on probation.  Here, in addition to having the opportunity to apply for leave to appeal, Smith had an opportunity in the circuit court to file a petition for post-conviction relief under the Maryland Uniform Postconviction Procedure Act.  CP § 8-401 excuses only the failure to apply for leave to appeal, not the failure to pursue other means of raising the issues that a petitioner raised at a coram nobis proceeding.

As an initial matter, as the Majority appears to acknowledge, despite its profound reliance on Skok for the conclusion that the failure to pursue post-conviction relief is not a waiver of the right to pursue coram nobis relief, see Maj. Slip Op. at 21-27, this is not the holding of Skok.  In Skok, 361 Md. at 60-61, 760 A.2d at 651, the trial court initially erroneously denied coram nobis relief on the ground that Skok had an available remedy through post-conviction proceedings—although post-conviction relief was not available to Skok because he was neither incarcerated nor on parole or probation—and later denied Skok's motion for reconsideration on the ground that coram nobis relief is extraordinary relief and was not appropriate.  The Court of Special Appeals affirmed on the ground that

---

[7]The Majority similarly concludes that Smith's failure to move to withdraw or set aside the guilty plea does not constitute waiver of the right to pursue coram nobis relief. See Maj. Slip Op. at 2, 26, 36 n.13.  As the Majority recognizes, see Maj. Slip Op. at 21 n.8, however, the issue of whether Smith's failure to move to withdraw or set aside the guilty plea constitutes a waiver is not preserved for appellate review, having not been "raised in or decided by" the circuit court, see Md. R. 8-131(a); as such, I would decline to exercise the discretion to address the issue.

- 19 -

"coram nobis relief can only be granted when based on facts not known to the trial judge when the plea was accepted." Id. at 61-62, 760 A.2d at 652 (citation and internal quotation marks omitted). Upon review, this Court expanded the scope of coram nobis relief, holding that coram nobis applies to both errors of fact and errors of law "on constitutional or fundamental grounds[,]" and set forth the criteria that must be satisfied to pursue coram nobis relief. Id. at 78-80, 760 A.2d at 661-62. Skok, however, is not the same as the instant case. As the Majority readily admits, in Skok, we granted the petition for a writ of *certiorari* "for the express purpose of 'resolving important questions concerning the right to appeal in a coram nobis action and the issues which may properly be raised in such an action.'" Maj. Slip Op. at 23 (quoting Skok, 361 Md. at 55, 760 A.2d at 648) (brackets omitted). And, significantly, as the Majority explains, see Maj. Slip Op. at 23, 23 n.9, 26 n.10, 27, in Skok, this Court did not address—and was not asked to address—whether the failure to pursue post-conviction relief when available acts as a waiver of the right to later seek coram nobis relief; *i.e.*, that question was not before this Court, and this Court did not offer an opinion one way or the other on the matter.

Nonetheless, the Majority implies that it is persuasive that this Court did not "hint at the possibility that" Skok's failure to seek post-conviction relief would constitute a waiver of coram nobis relief. Maj. Slip Op. at 27 n.10. The Majority acknowledges that the issue of whether the failure to seek post-conviction relief is a waiver of the right to seek coram nobis was not before this Court in Skok, but reasons: "Nonetheless, [in Skok,] we were well aware of the procedural history of the case, . . . and did not even hint at the possibility that, were the issue before the Court, the outcome of the appeal would have been

- 20 -

quite different." Maj. Slip Op. at 26-27 n.10. I cannot agree with this analysis. Essentially, the Majority suggests that this Court's failure to rule on a matter or to "hint at" a matter that was not before this Court has precedential value. Although it may appear reasonable, or at least tempting under the facts of this case, to point out the similarities between Skok's and Smith's positions—even though, in Skok, this Court did not address the circumstance for which the Majority relies on Skok—it is a precarious course for this Court to accord significance to procedural facts and conclude that the absence of action by this Court—or the failure of this Court to take into account those facts—somehow constitutes part of a holding of this Court and rises to the level of precedent. This would be a troubling standard. For example, this Court could look back at any number of cases, find factual similarities to cases currently under review, and conclude that those facts must have informed the holding, even though the facts were not addressed and this Court was not asked to consider any issue concerning those facts. It is one thing to point out factual similarities between cases; it is an entirely different matter to conclude, where this Court did not address facts or an issue not before this Court, how this Court would have ruled on the issue or to imply that this Court did, indeed, rule on the issue as part of its holding.

By contrast, here, not only is the issue of Smith's failure to pursue post-conviction relief at a time when it was available squarely before this Court, but also, waiver has been at issue throughout this case, which follows several key developments in Coram nobis law that occurred after Skok—namely, our holding in Holmes, 401 Md. at 445-46, 932 A.2d at 708, that the failure to apply for leave to appeal creates a rebuttable presumption that an individual has waived the right to seek coram nobis relief, and the General Assembly's

- 21 -

enactment of CP § 8-401.

Next, although it may seem inconsistent for the General Assembly to legislate that the failure to apply for leave to appeal does not constitute a waiver and to remain silent concerning the failure to pursue post-conviction relief, for whatever reason, CP § 8-401 simply does not speak to or in any way address the failure to pursue post-conviction relief. It may be presumed that the General Assembly knew of the Maryland Uniform Postconviction Procedure Act, which existed long before CP § 8-401 was enacted, see Ford Motor Credit Co., LLC v. Roberson, 420 Md. 649, 667, 25 A.3d 110, 120 (2011) ("[T]he [General Assembly] is presumed to act with full knowledge of existing laws[.]" (Citation and internal quotation marks omitted)); yet, in enacting CP § 8-401, the General Assembly did not prevent the failure to pursue post-conviction relief from acting as a waiver to the right to seek coram nobis relief. As such, the circumstance that the failure to pursue post-conviction relief acts a waiver of the right to seek coram nobis relief is completely unaffected by CP § 8-401. Moreover, "[b]asic principles of waiver are applicable to issues raised in coram nobis proceedings. . . . [T]he same body of law concerning waiver . . ., which is applicable under the Maryland [Uniform] Post[c]onviction Procedure Act . . . shall be applicable to a coram nobis proceeding challenging a criminal conviction." Skok, 361 Md. at 79, 760 A.2d at 661-62 (citations omitted). In other words, under the current state of the law, there is simply no basis for concluding that the failure to pursue post-conviction relief does not constitute a waiver of the right to seek coram nobis relief.

At oral argument, relying on Parker v. State, 160 Md. App. 672, 866 A.2d 885 (2005), Smith's counsel argued that "[y]ou have a fundamental right to say [your] guilty

plea is not . . . valid because the elements were never satisfied, you can't waive that particular right. So . . . under the waiver prong[,] there was no waiver here just because [Smith] did not file her . . . post-conviction petition that time."[8] As I understand it, Smith's counsel's contentions are that Smith did not waive the right to challenge her guilty plea on the basis that it was not knowingly and voluntarily entered, and that the existence of a knowing and voluntary plea is a fundamental right for which waiver must be knowing and voluntary under Maryland's post-conviction jurisprudence. To the extent that Smith claims that the failure to file a petition for post-conviction relief does not result in waiver of her coram nobis claim because she alleges the violation of fundamental rights—*i.e.*, the failure to be advised of the nature of the charges to which she pled guilty and immigration consequences—Smith conflates the issue of the waiver of a fundamental right in the post-conviction process with the requirement to pursue post-conviction relief. The principle that waiver of a fundamental right in the post-conviction process must be knowing and

---

[8]Smith's counsel's reliance on Parker is misplaced. In Holmes, 401 Md. at 468, 932 A.2d at 721-22, we addressed an argument that the defendant made in reliance on Parker, and observed that the defendant conflated "whether he knowingly and intelligently waived his right to [apply] for leave to appeal with the voluntariness of his guilty plea[.]" In Parker, the defendant "was not advised in any of the proceedings about his right to file applications for leave to appeal so that he could not have knowingly and intelligently waived his right to file." Holmes, 401 Md. at 469, 932 A.2d at 722. Thus, "[w]hether or not the standards for voluntariness were conflated in *Parker*, it [was] clear that Parker could not have intelligently and knowingly waived his right to [apply] for leave to appeal because he was never advised of that right." Id. at 470, 932 A.2d at 722. Like the defendant in Holmes, Smith's counsel apparently improperly conflates the voluntariness of Smith's guilty plea with whether she knowingly and intelligently waived her right to apply for leave to appeal. The record demonstrates that Smith was advised orally and in writing of her right to apply for leave to appeal; thus, by failing to apply for leave to appeal after being informed of her right to do so, Smith knowingly and intelligently waived her right to apply.

- 23 -

intelligent does not stand for the proposition that seeking post-conviction relief is not a prerequisite to the right to seek coram nobis relief.[9]

To be sure, in the context of post-conviction proceedings, this Court has held that the failure to allege the violation of a fundamental right by seeking leave to appeal does not constitute waiver unless the waiver is knowingly and intelligently made. See McElroy v. State, 329 Md. 136, 140-41, 617 A.2d 1068, 1070-71 (1993) ("As to those fundamental rights, intelligent and knowing waiver requires that the petitioner's knowledge of the right and the petitioner's personal waiver of the right be reflected on the record. As to lesser or non-fundamental rights, the petitioner will be deemed to have waived any claim of error if petitioner . . . failed to exercise a prior opportunity to raise it notwithstanding a lack of personal knowledge of the right of which petitioner was deprived, except when the failure to allege the error is excused by special circumstances." (Footnote omitted)). Coram nobis relief, however, is, by definition, extraordinary relief to be granted where the issue raised involves fundamental rights; in other words, coram nobis proceedings involve the very type of rights that are preserved for review in post-conviction proceedings absent a knowing and intelligent waiver.

---

[9]As to the failure to file a petition for post-conviction relief, the Maryland Uniform Postconviction Procedure Act applies to convicted people who are either "confined under sentence of imprisonment; or [] on parole or probation." CP § 7-101 (paragraph break omitted). Under CP § 7-103(b), "[u]nless extraordinary cause is shown," a petition for post-conviction relief "may not be filed more than 10 years after the sentence was imposed." In other words, an individual must petition for post-conviction relief within ten years of being sentenced and while incarcerated or on parole or probation. Smith failed to do so.

Following Smith's counsel's lead, the Majority endorses the position that Smith's waiver is required to be knowing and intelligent because she asserts a fundamental right. See Maj. Slip Op. at 32. Expounding on this point, the Majority provides an exposition of the law concerning what is now CP § 7-106(b), knowing and intelligent waiver, rebuttal of the presumption that a waiver is knowing and voluntary, and special circumstances. See Maj. Slip Op. at 28-32. For three reasons, the Majority's analysis is misplaced. First, the Majority, like Smith's counsel, conflates the requirement that waiver of a fundamental right be knowing and intelligent with the principle that a litigant must pursue post-conviction relief when it is available to pursue coram nobis relief later. Second, the body of law on which the Majority relies has little to do with Smith's position in the instant case, as Smith neither raised the applicability of CP §7-106(b) nor contended that she had rebutted the presumption of a knowing and voluntary waiver of the right to pursue post-conviction relief.[10] In short, neither in the superceding petition for coram nobis relief, at the coram nobis hearing, nor before this Court, did Smith ever raise that a rebuttable presumption as to a knowing and voluntary waiver existed under CP § 7-106(b), nor did Smith rebut or attempt to rebut the presumption that she knowingly and intelligently waived the right to pursue post-conviction relief, and, by extension, any allegation of error that could have been made in a post-conviction petition. Third, the Majority's conclusion "that the record itself offers the necessary rebuttal to the presumption" is a stretch. Maj. Slip Op. at 35.

_____

[10]Smith, however, argued before the circuit court that she did not knowingly and intelligently waive her right to apply for leave to appeal or, alternatively, that special circumstances existed to excuse waiver.

- 25 -

As to the presumption being rebutted by the record, CP § 7-106(b)(2) states that "when a petitioner could have made an allegation of error . . . but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation." In other words, inaction (or non-filing) can give rise to a rebuttable presumption of waiver where the petitioner could have, but did not, make an allegation of error. Here, as explained above, Smith did not raise the arguments and points on which the Majority relies; Smith has not argued that she rebutted the presumption that she knowingly and intelligently waived the right to pursue post-conviction relief. Aside from the above-discussed remarks that Smith's counsel made at oral argument, Smith has not raised the issue that her waiver must have been knowingly and intelligently made, let alone rebutted the presumption that she knowingly and intelligently waived her right to pursue post-conviction relief. In any event, in my view, as explained *infra* on pages 28 to 29, Smith would have known at the time of the guilty plea whether she understood the nature and elements of the charge against her; similarly, to the extent that Smith believed she had a claim concerning not being advised as to how the guilty plea would affect her immigration status, Smith would have known that she was not a United States citizen, that the circuit court had specifically advised her that her immigration status could be affected by the guilty plea, and that the offense to which was pleading guilty involved a quantity of drugs beyond those intended for personal use. Smith's contention that she could only have discovered these circumstances nine years later is simply insufficient to rebut the presumption that she knowingly and intelligently waived her right to pursue post-conviction relief as to those points.

- 26 -

The Majority states that the record is devoid of any finding by the coram nobis court that Smith actually knew of the remedy of post-conviction and intelligently forwent the opportunity to pursue such relief; in so doing, the Majority implies a requirement that the record demonstrate that Smith needed to have been aware of the right to pursue post-conviction relief or that there was an obligation that Smith be affirmatively advised or made aware of such a right. See Maj. Slip Op. at 34-35. This, however, misses the mark. Unlike with an individual's right to appeal or to apply for leave to appeal following a guilty plea, a trial court is not required to advise an individual of the right or availability of post-conviction relief. Maryland Rule 4-342(i)(1), concerning sentencing procedures in non-capital cases, provides that certain advice be given to a defendant, including, in relevant part, advice of:

> (A) any right of appeal, (B) any right of review of the sentence under the Review of Criminal Sentences Act, (C) any right to move for modification or reduction of the sentence, (D) any right to be represented by counsel, and (E) the time allowed for the exercise of these rights.

Thus, whether Smith was advised by the circuit court at the time of sentencing of the right to pursue post-conviction relief is of no consequence in determining whether Smith waived the right to pursue post-conviction by failing to pursue such relief.

This Court has repeatedly stated that, to be eligible for coram nobis relief, a petitioner must demonstrate, among other things, that the grounds for challenging the criminal conviction are of a constitutional, jurisdictional, or fundamental character, and that there is no other statutory or common law remedy available. See Skok, 361 Md. at 78, 80, 760 A.2d at 661, 662. Although the requirement is that no other statutory or common

law remedy be available to the coram nobis petitioner when he or she files a petition for coram nobis relief, it is illogical that coram nobis relief may be available where a petitioner has failed to pursue post-conviction relief concerning the same claims before petitioning for coram nobis relief. Nothing in Skok, Holmes, or CP § 8-401 stands for the proposition that a coram nobis petitioner may seek coram nobis relief without first pursuing relief under the Maryland Uniform Postconviction Procedure Act; in other words, Skok, Holmes, and CP § 8-401 do not excuse a petitioner from pursuing post-conviction relief before seeking the extraordinary remedy of coram nobis relief.

Smith had the opportunity to petition for post-conviction relief while on probation, but she failed to do so. Smith's complaint that her guilty plea was not knowingly and voluntarily given—that she was not advised of the nature and elements of the charge to which she pled guilty and that she was not advised regarding how the guilty plea would affect her immigration status—would have been readily apparent to her following the guilty plea hearing. As to not being advised of the nature and elements of the offense, Smith would have known while on probation whether she had grounds to pursue post-conviction relief on that basis, and not being advised of the nature and elements of the offense is not related to the issue of removal; in other words, Smith clearly would have known whether she had been advised of the nature and elements of the offense prior to being detained at the border nine years after pleading guilty.

As to not being advised regarding how the guilty plea would affect her immigration status, Smith knew that she was not a United States citizen and would have known while on probation whether she had been advised regarding how the guilty plea would affect her

immigration status.  Indeed, at the guilty plea proceeding, the circuit court specifically asked Smith if she understood that pleading guilty could "affect [her] immigration status[,]" to which she responded, "[y]es[.]"  Moreover, Smith knew that her conviction resulted from recovery of a package containing 7,852 grams of marijuana with a street value of $20,000; in other words, she knew the offense involved a significant quantity of marijuana and the circumstances exceeded the intent for personal use.  Under the circumstances, it would be incorrect to conclude that Smith could not have known of the potential immigration consequences of her conviction until she was detained in 2012.[11]  In short, Smith failed to seek post-conviction relief at the time the opportunity was available to her and when she could have raised the deficiencies she now alleges as to the guilty plea and ineffective assistance of counsel.  Thus, I would hold that, independent of CP § 8-401, by failing to pursue post-conviction relief, Smith waived the right to later pursue the extraordinary remedy of coram nobis relief.

It is troubling that the Majority holds that, independent of CP § 8-401, the failure to pursue post-conviction does not constitute a waiver of the right to pursue coram nobis relief.  Despite the circumstance that CP § 8-401 does not mention, address, or in any way change the requirement to pursue post-conviction relief, under the Majority's holding, neither the failure to file for leave to appeal nor the failure to pursue post-conviction relief

---

[11]At the time of Smith's conviction, the United  States Immigration and Nationality Act provided that aliens could be removed if, among other things, the alien was convicted of "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana" or if the alien "is, or at any time after admission has been, a drug abuser or addict[.]"  8 U.S.C. § 1227(a)(2)(B) (2002).

is a waiver of the right to seek coram nobis relief.

After all the dust settles, the basic point the Majority makes is that it is a reasonable extension of CP § 8-401 to conclude that the failure to pursue post-conviction relief does not act as a waiver because such a result is in accord with the "beneficent purpose" of CP § 8-401, *i.e.*, in accord with the General Assembly's intent. Maj. Slip Op. at 35-36. To this point, I would hold that there is insufficient evidence of the General Assembly's intent to construe the failure to pursue post-conviction relief as not being a waiver of the right to pursue coram nobis relief; and that, absent clear legislative intent, this Court should not read into CP § 8-401 what is not there. In other words, this Court should continue to follow Holmes until and at such time as we are certain of the General Assembly's intent.

Equally troubling is the Majority's conclusion that CP § 8-401 applies to any petitions for coram nobis relief pending as of CP § 8-401's effective date of October 1, 2012. Specifically, under the Majority's holding, any individual facing a collateral consequence from a previous conviction and whose case was "pending in court when [CP § 8-401] bec[a]me[] effective[,]" Maj. Slip Op. at 20 (citation and internal quotation marks omitted)—not just those convicted on or after October 1, 2012, CP § 8-401's effective date—may petition for coram nobis relief despite not having pursued leave to appeal or, indeed, post-conviction relief. As a consequence, the State will be required to defend against petitions for coram nobis relief—in some instances, many years after the individual was convicted, and perhaps even after the coram nobis proceeding has been closed— without the ability to argue that the individual waived the right to bring such a claim. In a footnote, the Majority in *dicta* states:

- 30 -

> We do not decide . . . whether . . . someone . . . who was found to have waived the right to coram nobis relief by failing to file for leave to appeal his or her conviction, is precluded from filing, now or in the future, a subsequent petition for coram nobis relief, in order to litigate a claim not previously decided on its merits. In this connection, we have stated in the past that there is no time limit for seeking coram nobis relief . . . ; moreover, insofar as our research discloses, we have not limited the number of coram nobis petitions that can be filed.

Maj. Slip Op. at 15 n.6. Thus, the Majority seemingly invites individuals who previously sought and were denied coram nobis relief, on the basis that the individual waived the right to do so by failing to pursue leave to appeal, to file a second petition for coram nobis relief, making the Majority's holding on retroactivity broader than it may seem at first blush. The General Assembly could not have intended this result.

In sum, I would hold that CP § 8-401 applies prospectively to petitions for coram nobis relief as to convictions that occurred on or after October 1, 2012, the statute's effective date, as CP § 8-401 is neither procedural nor remedial, and substantively changes the law.

## II.

As to whether Smith's guilty plea was knowing and voluntary, we hold that the guilty plea was knowingly and voluntarily made, and that testimony of Smith's counsel pertaining to his advisement of Smith prior to the guilty plea about the nature of the charges against her was properly admitted at the coram nobis hearing for the purpose of determining whether Smith pled "voluntarily, with understanding of the nature of the charge" within the meaning of Maryland Rule 4-242(c).

In 2003, Maryland Rule 4-242(c) (1999) provided in pertinent part:

The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

In State v. Priet, 289 Md. 267, 288, 424 A.2d 349, 359 (1981), we held that Maryland Rule 4-242(c)'s predecessor "does not require that the precise legal elements comprising the offense be communicated to the defendant[,]" but instead requires simply that a guilty plea not be accepted until the trial court determines "that the accused understands the 'nature' of the charge." We stated that the Rule "contemplates that the court will explain to the accused, in understandable terms, the nature of the offense to afford him a basic understanding of its essential substance, rather than of the specific legal components of the offense to which the plea is tendered." Id. at 288, 424 A.2d at 359-60. As such, the determination is "made on a case-by-case basis, taking into account the relevant circumstances in their totality as disclosed by the record, including, among other factors, the complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the court's acceptance of the plea." Id. at 288, 424 A.2d at 360 (citation omitted). From this, we announced the following test: "[W]hether, considering the record as a whole, the trial judge could fairly determine that the defendant understood the nature of the charge to which he [or she] pleaded guilty." Id. at 291, 424 A.2d at 361.

More recently, in State v. Daughtry, 419 Md. 35, 42, 18 A.3d 60, 64 (2011), we held:

> [A]llowing a trial court, in ensuring that a guilty plea is knowing, voluntary, and entered intelligently, to rely essentially on nothing more than a presumption that "in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of . . . what he is being asked to admit" runs contrary to Rule 4-242's requirement that there be an adequate examination "on the record in open court."

(Ellipsis in original). In Daughtry, id. at 69, 18 A.3d at 80, we observed that "[o]ur jurisprudence, in determining the validity of a guilty plea, has focused always on whether the defendant, *based on the totality of the circumstances*, entered the plea knowingly and voluntarily." (Citations omitted) (emphasis in original). We noted that the record in that case demonstrated "that the only portion of the plea colloquy" that related to "ascertaining whether the plea was knowing and voluntary was [the defendant]'s affirmative response to the trial judge's question, 'Have you talked over your plea with your lawyer?'" Id. at 70, 18 A.3d at 81. In other words, it was not clear whether, in answering affirmatively, "the defendant understood merely the terms of the plea, but not the nature of the charges to which he plead guilty." Id. at 75, 18 A.3d at 84. Accordingly, we held that, "where the record reflects nothing more than the fact that a defendant is represented by counsel (as in the present case) and that the defendant discussed generically the plea with his or her attorney, such a plea colloquy is deficient under Rule 4-242(c), and the plea must be vacated." Id. at 71, 18 A.3d at 81.

In Daughtry, id. at 71, 18 A.3d at 81-82, we reiterated the test set forth in Priet, namely, that, "in determining whether a guilty plea is voluntary under current Rule 4-242(c), [the test] is whether the totality of the circumstances reflects that a defendant knowingly and voluntarily entered into the plea." (Footnote omitted). We also

"elaborate[d]" on the factors outlined in <u>Priet</u>, stating:

> Regarding the complexity of the charge, *Priet* explained that the nature of some crimes is readily understandable from the crime itself. We do not attempt to undertake here an enumeration of what crimes fall under this category . . . . Next, the personal characteristics of the accused are important, as one with a diminished mental capacity is less likely to be able to understand the nature of the charges against him than one with normal mental faculties. Finally, it is possible that the factual basis proffered to support the court's acceptance of the plea may describe the offenses charged in sufficient detail to pass muster under the Rule.

<u>Id.</u> at 73-74, 18 A.3d at 82-83 (citation, brackets, footnote, and internal quotation marks omitted). We further stated:

> Although Rule 4-242(c) and the caselaw require on-the-record, in open court, evidence from the plea colloquy that the defendant is aware of the nature of the charges against him, . . . it is of no matter whether (1) *the defendant* informs the trial court that either he understands personally or was made aware by, or discussed with, his attorney the nature of the charges against him . . .; (2) *the attorney* informs the trial court that he informed his client of the charges against the client . . .; or (3) *the trial court itself* informs the defendant of the charges against the defendant[.] The presence of any one of these scenarios on the record is strong evidence, absent other circumstances tending to negate a finding of voluntariness (*e.g.*, mental incapacity, lack of grasp of English language, etc.), that the defendant entered the guilty plea knowingly and voluntarily.

<u>Id.</u> at 74-75, 18 A.3d at 83-84 (emphasis in original) (citations omitted). At the conclusion of <u>Daughtry</u>, 419 Md. at 80-81, 18 A.3d at 87, we held that our decision was to be given "full retrospective effect."[12]

---

[12]In <u>Daughtry</u>, 419 Md. at 61-62, 18 A.3d at 75-76, we discussed in detail <u>Abrams v. State</u>, 176 Md. App. 600, 933 A.2d 887 (2007), in which the Court of Special Appeals declined to apply the "*Henderson/Priet* presumption"—*i.e.*, the presumption that that "in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit[,]" <u>Priet</u>, 289 Md. at 290, 424 A.2d at 361. In <u>Daughtry</u>, 419 Md. at 69, 18 A.3d at 80, we noted that, although the

Here, we conclude that Smith's plea was knowing and voluntary, and Smith's lawyer's testimony was admissible at the coram nobis hearing. This result is consistent with Daughtry, 419 Md. at 80 n.31, 18 A.3d at 87 n.31 ("Because our emphasis as an appellate court must be on what the trial judge could fairly determine at a defendant's guilty-plea hearing in determining whether a defendant understood the nature of the charge to which he pleaded guilty, we may look only to the record as a whole that was before the trial judge during that proceeding." (Citation and internal quotation marks omitted)). By its own terms, this Court's above-quoted statement in Daughtry applies only to an appeal of a conviction after a plea. Daughtry was an appeal of a conviction after a plea, not an appeal of a ruling on coram nobis. Thus, as this Court expressly framed it, the issue in Daughtry was not just whether the defendant understood the nature of the charges, but also whether the trial court was correct "in determining whether [the] defendant understood the nature of the charges[.]" This distinction is vital, as, in a coram nobis case such as this one, the **only** issue is whether the defendant understood the nature of the charges—**regardless** of whether the trial court could determine as much. By contrast, in an appeal of a conviction after a plea such as the one in Daughtry, the ultimate issue depends on what the

_____

Henderson/Priet presumption "remain[ed] intact[,]" employing the presumption "in cases in which the only evidence proffered to show that a defendant is aware of the nature of the charges against him is the fact that he or she is represented by an attorney and that the defendant discussed the plea with his or her attorney undermines the purpose of a 'totality of the circumstances test.'" Thus, in Daughtry, id. at 75, 18 A.3d at 84, "[b]ecause employing the *Henderson/Priet* presumption on an otherwise naked record would be contrary to Rule 4-242's requirement that there be an examination 'on the record in open court,' we [held] that, based on the totality of the circumstances, Daughtry's plea was not entered knowingly and voluntarily, and it must be vacated." (Footnote omitted).

trial court could find, and that issue is necessarily limited to what happened at the plea hearing, which includes the entirety of what the trial court could find. Simply put, here, it does not matter what the trial court could find; what matters is whether Smith's lawyer told Smith about the nature of the charges.

In addition, Daughtry is factually distinguishable. In Daughtry, 419 Md. at 76 n.25, 18 A.3 at 84 n.25, this Court declined to consider plea counsel's statement at a sentencing hearing that the defendant "understands what he's been charged with," as that statement occurred "sixteen months after the plea hearing [and thus] in no way inform[ed] the question of what [the defendant] understood at the plea hearing[.]" In other words, as this Court correctly pointed out, at issue was whether the defendant understood the charges at the time of the plea hearing, not at the time of sentencing; thus, the defendant's plea counsel's statement was not relevant. By contrast, here, Suissa testified that he told Smith about the nature of the charges **before the plea hearing**. Unlike the plea counsel in Daughtry, Suissa did not testify that Smith understood the charges sometime after the plea hearing (*e.g.*, at the hearing on sentencing). Instead, Suissa's testimony directly related to Smith's understanding of the charges at the time of the guilty plea. Thus, here, Suissa's testimony was indeed relevant.

Based on the analysis above, we hold that a lawyer's testimony at a coram nobis hearing concerning having advised a defendant prior to the guilty plea of the nature of the charges against him or her is admissible. Such testimony may be considered in a coram nobis proceeding in determining whether a defendant pled "voluntarily, with understanding of the nature of the charge" within the meaning of Maryland Rule 4-242(c). Coram nobis

is extraordinary relief designed to relieve a petitioner of substantial collateral consequences outside of a sentence of incarceration or probation. As such, coram nobis is an equitable remedy that arises when an individual faces circumstances that did not exist at the guilty plea hearing, such as removal or sentencing under the Armed Career Criminal Act, see 18 U.S.C. § 924(e), or the Federal Sentencing Guidelines. Matters beyond the scope of the record of the guilty plea hearing are already, by nature of the proceeding, relevant to the trial court at a coram nobis proceeding. And, most importantly, a coram nobis proceeding's purpose is not to determine based on the record whether the trial court erred at the time of a guilty plea, but instead to determine whether a petitioner indeed knowingly and voluntarily pled guilty.

In this case, at the hearing on the petition for coram nobis relief, Suissa testified that he "[a]bsolutely" reviewed the statement of charges and indictment with Smith, and that he did not have any concerns that Smith did not understand the nature of the charges against her. Suissa testified that he discussed with Smith the amending of the charge from possession with intent to distribute to conspiracy to distribute, and that he discussed the definition of conspiracy with Smith. From this testimony, the circuit court determined that Smith was actually advised of the nature of the charges, and that her plea was knowing and voluntary. Suissa's testimony "is strong evidence, absent other circumstances tending to negate a finding of voluntariness . . ., that [Smith] entered the guilty plea knowingly and voluntarily." Daughtry, 419 Md. at 75, 18 A.3d at 83-84. Nothing in the record indicates that Smith was mentally incapacitated at the time of the hearing, that she lacked a grasp of the English language, or that she was coerced by someone into pleading guilty—in other

- 37 -

words, nothing in the record undermines the determination that Smith understood the nature of the charges.[13] Indeed, at the time of the guilty plea hearing, Smith was twenty-two years old, had completed the eleventh grade, and had resided in the United States for fourteen years.

Upon review of the totality of the circumstances, we conclude that: the circuit court was correct in determining that Smith understood the nature of the charges; Smith's plea was knowing and voluntary; and the circuit court was correct in denying Smith's request for coram nobis relief.

---

[13]Despite Smith's contentions in the initial and superceding petitions for coram nobis relief that she was not advised of the elements of the crime, at the coram nobis hearing, she testified that she and Suissa "went over" the charges, but she did not recall Suissa "actually sitting down and explaining to [her] in detail[], you know, what is what." Smith also testified that, although she recalled discussing the plea with Suissa, she could not recall him discussing the elements of the offenses. As such, Smith acknowledged that, to some extent, Suissa explained the nature of the offense to her.

Circuit Court for Montgomery County
Case No. 96240C
Argued: December 10, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 47

September Term, 2014

STATE OF MARYLAND

v.

KERRYANN N. SMITH

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by McDonald, J., concurring
in Part I of Chief Judge Barbera's opinion
and in Part II of Judge Watts' opinion

Filed: July 13, 2015

*Harrell, J., participated in the hearing of the
case, in the conference in regard to its decision
and in the adoption of the opinion but he retired
from the Court prior to the filing of the opinion.

Chief Judge Barbera and Judge Watts have each written very thorough and thoughtful opinions, but I can only go part way with each of them.

I join Part I of Chief Judge Barbera's opinion (procedural prerequisites) as it seems clear that Maryland Code, Criminal Procedure ("CP"), §8-401 was enacted as a procedural and remedial measure. As Chief Judge Barbera explains well, the statute removes a procedural obstacle to a circuit court's consideration of the merits of a *coram nobis* petition. Thus, it provides – or restores – a remedy for those who suffer serious collateral consequences from a fundamental defect in a prior criminal prosecution. I thus agree that it applies to petitions pending on the date it became effective and that it is unnecessary to attempt to apply otherwise undefined labels like "prospective" or "retrospective."

I join Part II of Judge Watts' opinion (merits of this petition). As both opinions lay out, the writ of *coram nobis* is intended to correct the collateral consequences of a constitutional or fundamental error in an earlier criminal proceeding. But it is not necessarily a remedy for non-compliance with part of a procedural rule on how a guilty plea is taken. Nor, as Judge Watts persuasively sets out, is review limited to the record of the plea proceeding, as it would be in a direct appeal. The petitioner has the burden of showing an error of fundamental, compelling dimensions. *See, e.g., Skok v. State*, 361 Md. 52, 73, 760 A.2d 647 (2000) (*coram nobis* addressed to errors "of the most fundamental character") (citations omitted); *Holmes v. State*, 401 Md. 429, 475-76, 932 A.2d 698 (2007) (Raker, J., dissenting) ("an extraordinary remedy, to be employed only upon compelling circumstances").

In my view, it is because the writ provides relief only as to constitutional or fundamental errors – and not every error that might bring relief in a direct appeal – that the Legislature (in CP §8-401), and this Court, have adopted a policy to forgive what would otherwise be procedural mis-steps precluding consideration of the merits of a petition. This appears to me quite sensible and not at all "nonsensical."